Filed 12/16/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| M. TODD JENKS,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>DLA PIPER RUDNICK GRAY CARY US LLP,<br><br>        Defendant and Respondent. | A143990<br><br>(San Francisco County<br>Super. Ct. No. CGC-09-493491) |

After plaintiff M. Todd Jenks resigned from his position as an associate attorney, he sued his employer, defendant DLA Piper Rudnick Gray Cary US LLP (DLA Piper), alleging the law firm had violated the terms of his resignation agreement by preventing him from receiving certain disability benefits. DLA Piper successfully moved to compel arbitration as the successor by merger to an arbitration agreement entered into between plaintiff and his prior employer. After the arbitration was completed, the trial court granted DLA Piper's motion to confirm the award. Plaintiff appeals from the trial court's order affirming the award and denying his motion for new trial, contending the court erred in concluding his claims were subject to arbitration. We affirm.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On May 8, 2000, the law firm Gray Cary Ware & Friedenrich (Gray Cary) sent plaintiff a letter offering him employment as an associate attorney with the firm (Offer Letter). The Offer Letter included a provision requiring both parties to submit all

disputes or claims relating to or arising out of their employment relationship to binding arbitration.[1]

On May 12, 2000, plaintiff accepted Gray Cary's offer.

On January 1, 2005, Gray Cary merged into DLA Piper.

On February 19, 2006, plaintiff signed a "Confidential Resignation Agreement and General Release of Claims" (Termination Agreement). Under the Termination Agreement, DLA Piper agreed to "continue to provide [plaintiff] with insurance coverage and other benefits, insurance and otherwise, currently provided by the Firm to [him]" until August 2006, when his employment with DLA Piper would officially terminate. The Termination Agreement is silent with respect to dispute resolution.

In October 2006, DLA Piper published a document entitled, "Wraparound Plan Document and Summary Plan Description for the Piper Rudnick LLP Welfare Benefit Plan" (Wraparound Plan).

On October 16, 2009, plaintiff filed a complaint against DLA Piper and Standard Insurance Company[2] alleging four causes of action: (1) breach of the implied covenant of good faith and fair dealing, (2) breach of contract, (3) promissory fraud, and (4) constructive fraud. Plaintiff contended that while the Termination Agreement obligated DLA Piper to provide him with short-term disability (STD) benefits, the firm

---

[1] The arbitration provision states: "In the event of any dispute or claim relating to or arising out of our employment relationship or this agreement (including, but not limited to, any claims of breach of contract, wrongful termination or age, sex, race or other discrimination or harassment under any state or federal statute or common law), you and the Firm agree that all such disputes shall be fully and finally resolved by binding arbitration conducted by the American Arbitration Association ('AAA') in Santa Clara County, California in accordance with the AAA's National Rules for the Resolution of Employment Disputes. We specifically agree that an arbitrator may be appointed under an expedited process and shall have full authority to order injunctive relief. The Firm will pay any fees charged by an artibrator to hear this matter, as well as any other fees that would not customarily be borne by you in the event any dispute were litigated in court. By this agreement you understand and acknowledge that you and the Firm are each waiving the right to a judicial forum, including the right to a jury trial."

[2] Standard Insurance Company was subsequently dismissed from this action with prejudice in November 2011.

had "undervalued" his benefits by computing them based on "artificially reduced salary figures."

On March 11, 2010, DLA Piper filed a petition to compel arbitration.

On March 23, 2010, plaintiff filed his opposition to the petition. In his opposition, he asserted the Termination Agreement constituted a novation of the Offer Letter, thereby extinguishing the arbitration provision. He also argued that even if the arbitration provision had survived, claims involving the STD plan were not subject to arbitration.

On May 13, 2010, the trial court entered its order granting defendant's petition to compel arbitration. The court found the Termination Agreement was a separate agreement applying to issues of termination only, and that it did not supersede the arbitration agreement contained in the Offer Letter. The court also found all of plaintiff's claims were subject to arbitration. Judicial proceedings were stayed pending resolution of arbitration.

On July 7, 2010, plaintiff filed a first amended complaint (FAC) in the arbitration proceeding, alleging eight causes of action.[3]

On August 22, 2013, after 11 hearing days of arbitration, the arbitrator issued an award. The arbitrator determined DLA Piper had breached the Termination Agreement, finding plaintiff was entitled to compensatory damages for STD payments of which he was deprived as a result of the reduced salary figure used to compute his benefits. The arbitrator also concluded plaintiff had suffered some degree of emotional distress caused by DLA Piper's conduct. The arbitrator awarded $41,000 in contract damages plus interest from the date of the breach, and $45,000 in emotional distress damages. Plaintiff was awarded $7,535.67 in costs. All his other claims were denied.

On November 20, 2013, plaintiff filed a petition in federal district court to confirm in part, vacate in part, and/or modify the arbitration award.

---

[3] In addition to repeating the causes of action from his complaint, the FAC includes two causes of action against DLA Piper that invoke his rights under ERISA.

On December 10, 2013, DLA Piper filed a petition in state court to confirm the arbitration award.

On December 11, 2013, DLA Piper filed a petition in federal district court to dismiss plaintiff's petition.

On December 31, 2013, plaintiff filed a demurrer to DLA Piper's state court petition to confirm the arbitration award.

On February 4, 2014, the trial court filed its order granting DLA Piper's petition to confirm the arbitration award. The court overruled plaintiff's demurrer, and denied a motion for an order staying the proceedings.

On May 14, 2014, the trial court filed its statement of decision confirming the arbitration award. The court first found it lacked jurisdiction to vacate the arbitration award, because plaintiff's opposition was untimely filed. The court also concluded plaintiff had forfeited his argument that DLA Piper, as a nonsignatory, lacked standing to enforce the Offer Letter's arbitration agreement, observing that even if the argument was not forfeited, it failed on its merits because DLA Piper had succeeded to Gray Cary's contractual rights.

On June 26, 2014, plaintiff filed objections to the proposed judgment.

On July 10, 2014, the district court dismissed plaintiff's federal petition for lack of federal jurisdiction. (*Jenks v. DLA Piper (US) LLP* (N.D. Cal. July 10, 2014, 13-CV-05381-VC) 2014 U.S. DIST. LEXIS 94680.)

On August 26, 2014, the trial court filed an amended judgment. In conformity with the arbitration award, judgment was entered in favor of plaintiff in the sum of $120,112, plus $12,142 in postaward interest. He was also awarded costs.

On September 22, 2014, plaintiff filed a motion for a new trial.

On November 20, 2014, the trial court filed its order denying the motion for a new trial.

On December 24, 2014, plaintiff filed a notice of appeal from the judgment and the order denying the motion for a new trial.

4

**DISCUSSION**

## I. Standards of Review

An order granting a petition to compel arbitration is not appealable, but is reviewable on appeal from a subsequent judgment on the award. (Code Civ. Proc., §§ 1294, 1294.2; *Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 648–649.) "We review the trial court's interpretation of an arbitration agreement de novo when, as here, that interpretation does not depend on conflicting extrinsic evidence. [Citations.] Our de novo review includes the legal determination whether and to what extent nonsignatories to an arbitration agreement can enforce the arbitration clause." (*DMS Services, LLC v. Superior Court* (2012) 205 Cal.App.4th 1346, 1352 (*DMS*).)

An order denying a motion for new trial will not be set aside unless there was an abuse of discretion that resulted in prejudicial error. (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 871–872.)

## II. Enforceability of the Arbitration Agreement

### A. General Principles

"A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (Code Civ. Proc., § 1281.) A party seeking to compel arbitration of a dispute "bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.)

"Code of Civil Procedure section 1281.2[4] allows a party to an arbitration agreement to petition to compel arbitration. By stating that a party to an arbitration

---

[4] Code of Civil Procedure section 1281.2 provides, in part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists . . . ."

5

agreement may petition to compel arbitration, the statute assumes that a proceeding to compel arbitration will be between the signatories to the agreement." (*Marenco v. DirecTV LLC* (2015) 233 Cal.App.4th 1409, 1416 (*Marenco*).)

"Nonsignatory defendants may enforce arbitration agreements 'where there is sufficient identity of parties.' [Citation.] Enforcement is permitted where the nonsignatory is the agent for a party to the arbitration agreement [citations], or the nonsignatory is a third party beneficiary of the agreement [citation]. In addition, a nonsignatory may enforce an arbitration agreement under the doctrine of equitable estoppel. The doctrine applies where, for example, a signatory plaintiff sues a nonsignatory defendant for claims that are based on an underlying contract. In such instance, the plaintiff may be equitably estopped to deny the nonsignatory defendant's right to enforce an arbitration clause that is contained within the contract that the plaintiff has placed at issue." (*Marenco, supra,* 233 Cal.App.4th at p. 1417.)

On appeal, plaintiff renews his argument that DLA Piper did not have standing to enforce the arbitration agreement because the firm was not a signatory to the Offer Letter containing the arbitration provision.

### B. Plaintiff's Nonsignatory Argument is Forfeited

We agree with DLA Piper that plaintiff forfeited his nonsignatory argument by failing to raise it below in opposition to the petition to compel arbitration. Although plaintiff resisted the petition to compel, he did so on the ground that the Termination Agreement extinguished the arbitration agreement because it operated as a novation of the Offer Letter. He also contended that under the Wraparound Plan, disputes relating to STD benefits were to be resolved by litigation in state or federal court. He did not make any arguments based on DLA Piper's status as a nonsignatory to the arbitration agreement, even though this circumstance is apparent on the face of the Offer Letter. Nor did he raise this issue at any point during the arbitration proceeding, even though he reserved the issue of arbitrability in his FAC. We therefore conclude plaintiff has forfeited this argument. (See, e.g., *Cummings v. Future Nissan* (2005) 128 Cal.App.4th 321, 328–329 [party to arbitration agreement is generally obliged to raise

6

unconscionability issues in court at the time she initially resists arbitration]; see also *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 30–31 [a party contending the entire arbitration agreement is unlawful generally must raise the issue at the outset in the trial court].)

### C. *DLA Piper Had Standing to Enforce the Arbitration Agreement*

#### 1. Marenco *Defeats Plaintiff's Nonsignatory Argument*

Even if we were to find plaintiff's nonsignatory argument has not been forfeited, his contention fails on the merits. As noted above, that DLA Piper is not a signatory to the Offer Letter is not, standing alone, a ground to deny it the right to compel arbitration: "There are circumstances in which nonsignatories to an agreement containing an arbitration clause can be compelled to arbitrate under that agreement. As one authority has stated, there are six theories by which a nonsignatory may be bound to arbitrate: '(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing or alter ego; (e) estoppel; and (f) third-party beneficiary' " (*Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1513.)[5] "These exceptions to the general rule that one must be a party to an arbitration agreement to invoke it or be bound by it 'generally are based on the existence of a relationship between the nonsignatory and the signatory, such as principal and agent or employer and employee, where a sufficient "identity of interest" exists between them.' " (*DMS, supra,* 205 Cal.App.4th at p. 1353.)

*Marenco* is dispositive of plaintiff's argument. In that case, 180 Connect had entered into an employment arbitration agreement with the plaintiff employee. DirecTV later acquired 180 Connect and retained its employees, including the plaintiff. (*Marenco, supra,* 233 Cal.App.4th at pp. 1412–1413.) After he filed a class action alleging violations of state wage and unfair competition laws, DirecTV moved to compel arbitration. (*Id.* at p. 1414.) In support of its motion, the company submitted the declaration of its assistant secretary who attested that during the acquisition of 180

---

[5] These circumstances also serve as grounds for an eligible nonsignatory to enforce an arbitration agreement *against* a signatory. (See *DMS, supra,* 205 Cal.App.4th at p. 1353.)

Connect, DirecTV had assumed all of 180 Connect's rights and obligations, including those arising from 180 Connect's employment relationships.[6] The plaintiff opposed the motion to compel, arguing that as a nonsignatory DirecTV lacked standing to enforce the arbitration agreement. The trial court concluded DirecTV did have standing because it was the successor to 180 Connect's rights and obligations. (*Ibid.*)

On appeal, the plaintiff again asserted DirecTV did not have standing to enforce the arbitration agreement. (*Marenco*, *supra*, 233 Cal.App.4th at p. 1416.) Noting it was an issue of first impression, the appellate court framed the inquiry as "whether a nonsignatory defendant may enforce an arbitration agreement between a signatory plaintiff and a corporation that was acquired by the nonsignatory defendant, which assumed all of the rights and obligations of the acquired corporation." (*Id.* at p. 1417.) The court concluded that "[b]y suing DirecTV for unpaid wages, Marenco acknowledged the existence of an employment relationship with the entity that survived the merger," thereby entitling the company to invoke the arbitration clause. (*Id*. at p. 1419.) The court also relied on the following passage from *Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262, 271–272, which we find instructive: " '[U]nder both federal and California decisional authority, a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are "intimately founded in and intertwined" with the underlying contract obligations. [Citations.] By relying on contract terms in a claim against a

_____

[6] Like the plaintiff in *Marenco*, *supra*, 233 Cal.App.4th at pp. 1418–1419, plaintiff challenges the sufficiency of the evidence regarding the merger that DLA Piper supplied in support of its petition to compel arbitration. DLA Piper human resources employee Lisa Partridge had signed a declaration stating that "[o]n January 1, 2005, the firm (which was formerly known as Gray Cary Ware & Friedenrich LLP) merged into DLA Piper." Plaintiff claims this evidence is insufficient and criticizes DLA Piper for failing to produce further evidence documenting the merger until shortly before the arbitration hearing was set to commence. He did not raise this evidentiary challenge below when he opposed the petition to compel arbitration, so the challenge is forfeited. Further, he acknowledges that prior to the arbitration hearing, DLA Piper produced the law firms' Plan of Affiliation, which formalized the merger.

nonsignatory defendant, *even if not exclusively,* a plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement.' " (*Marenco,* at pp. 1419–1420, italics added.) Based on the record and the parties' arguments, the court concluded the plaintiff's "continued employment with DirecTV served as his implied consent to preserving the original terms of employment, including the arbitration agreement."[7] (*Id.* at p. 1420.)

Plaintiff next claims the arbitration agreement is expressly limited to matters arising out of his employment relationship with Gray Cary because every reference to "the Firm" is intended as a reference to the former law firm, and the agreement does not mention any potential successors, assignors, or merger partners. He asserts "no reasonable construction of the 2000 Offer Letter supports the trial court's ruling that the Gray Cary contract controlled DLA Piper's *post*-merger contracts and conduct." However, in *Marenco* the court ordered arbitration of claims relating to post-merger conduct by the acquiring company. (*Marenco*, *supra*, 233 Cal.App.4th at p. 1422.) The lawsuit was brought against the successor DirecTV based on its practice of issuing debit cards that effectively deprived the plaintiff of wages he was entitled to under Labor Code section 212. (*Marenco*, at p. 1414 ["In the operative pleading . . ., he alleged that DirecTV had issued 'ADP TotalPay debit cards' . . . in payment of wages to the putative class of employee plaintiffs. . . . These . . . resulted in DirecTV's failure to pay plaintiffs' full wages . . . ."].)[8] Accordingly, plaintiff's argument is not persuasive.

---

[7] We note plaintiff himself acknowledged the continuous nature of his employment relationship in his complaint: "Beginning in 2000, [plaintiff] worked as an associate attorney for the law firm of Gray Cary Ware & Friedenrich; [plaintiff] later became an employee of DLA Piper as a consequence of a 2005 merger."

[8] In his reply brief, for the first time, and at oral argument, plaintiff attempted to distinguish *Marenco*, *supra*, 233 Cal.App.4th 1409, asserting the challenged practice was actually initiated by the predecessor corporation 180 Connect, with whom plaintiff had an arbitration arrangement. Hence, he claims that case applies only where the wrongful conduct is initiated by the original employer. He purports to rely on a "letter brief" submitted by Marenco's attorney in that case. However, the opinion itself references the conduct of DirecTV only in describing the allegations of the complaint. Additionally, the

9

## 2. DLA Piper Succeeded To Gray Cary's Contract Rights

Plaintiff further argues that surviving entities under California and Maryland corporate merger law do not acquire the "underlying terms and conditions of those employment relationships" that were negotiated by the disappearing entity.  He claims the surviving entity only succeeds to " 'the rights and property' " of its predecessor, and contends that a successor may not unilaterally bind its predecessor's employees to continue their employment under the terms and condition of their prior employment relationship without their consent.  However, the partnership statutes that apply to the instant case parallel the corporate statute at issue in *Marenco*, *supra*, 233 Cal.App.4th 1409,[9] supporting the conclusion that DLA Piper automatically acquired the right to enforce the arbitration agreement when it merged with Gray Cary.

DLA Piper is a limited liability partnership organized under Maryland law.  Under Maryland Corporations and Associations Article section 3-114 (section 3-114), when a merger of partnerships takes effect, the separate existence of the disappearing entity ceases and the surviving entity automatically succeeds to all the rights and property of the disappearing entity.  The surviving entity becomes subject to all of the former entity's debts and liabilities as if the surviving entity had incurred them itself.[10]  Section 3-114

referenced brief is not part of *our record,* and was not provided to the trial court nor to this court.  Further, plaintiff has not asked this court to take judicial notice of any pleadings submitted to the Second District panel that decided the *Marenco* appeal.

[9] Corporations Code section 1107, subdivision (a) provides: "Upon merger pursuant to this chapter the separate existence of the disappearing corporations ceases and the surviving corporation shall succeed, without other transfer, to all the rights and property of each of the disappearing corporations and shall be subject to all the debts and liabilities of each in the same manner as if the surviving corporation had itself incurred them."

[10] Maryland Corporations and Associations Article section 3-114, subdivision (f)(1) provides: "The successor is liable for all the debts and obligations of each nonsurviving corporation, partnership, limited partnership, limited liability company, and business trust.  An existing claim, action, or proceeding pending by or against any nonsurviving corporation, partnership, limited partnership, limited liability company, or business trust may be prosecuted to judgment as if the consolidation or merger had not taken place, or, on motion of the successor or any party, the successor may be substituted as a party and the judgment against the nonsurviving corporation, partnership, limited partnership,

10

also provides that "[t]he assets of each . . . limited liability company . . . transfer to, vest in, and devolve on the successor *without further act or deed.*" (Section 3-114, subd. (e)(1), italics added.) Maryland Corporations and Associations Article section 1-101, subdivision (d) provides: " 'Assets' means any tangible, intangible, real, or personal property *or other assets,* including goodwill and franchises." (Italics added.) It is not unreasonable to construe a partnership's contractual rights as "assets." (See, e.g., *ITT Telecom Products Corp. v. Dooley* (1989) 214 Cal.App.3d 307, 312 ["assets" of an acquired corporation in an asset-purchase deal encompass contract rights, including the right to enforce a contract provision against an employee].)

The analogous California statute is even clearer as to the accession of contract rights by merger. Gray Cary was a California limited liability partnership. Under our state's Corporations Code section 16914, subdivision (a)(1), "[w]hen a merger takes effect . . . [¶] (a) The separate existence of the disappearing partnerships . . . ceases and the surviving partnership . . . *shall succeed, without other transfer, act, or deed, to all the rights and property* whether real, personal, or mixed, of each of the disappearing partnerships . . . and shall be subject to all the debts and liabilities of each in the same manner as if the surviving partnership . . . had itself incurred them." (Italics added.) Thus, both states' laws support the conclusion that successor partnerships acquire the right to enforce the contractual rights of the prior entity.[11]

In asserting DLA Piper did *not* automatically succeed to the arbitration agreement, plaintiff cites to a string of cases, only one of which involves a statutory merger. In *Delmore v. Ricoh Americas Corp.* (N.D. Cal. 2009) 667 F.Supp.2d 1129 (*Delmore*), the

limited liability company, or business trust constitutes a lien on the property of the successor."

[11] Plaintiff asserts there are only two scenarios under which he could have been required to arbitrate his state law claims against DLA Piper: (1) language in the Offer Letter assigning the right to compel arbitration to any Gray Cary successor, and (2) a separately negotiated arbitration agreement between him and DLA Piper. We disagree. Notably, neither of these conditions was present in *Marenco, supra,* 233 Cal.App.4th 1409, yet the appellate court was satisfied in concluding the successor corporation acquired the right to enforce the arbitration agreement.

court enforced a pre-merger arbitration agreement where the parties, unlike the parties in *Marenco, supra*, 233 Cal.App.4th 1409, framed the issue as one of express assignment rather than automatic transfer of rights pursuant to a merger. The plaintiff's former employer had merged with the defendant successor corporation and the former employer's employees became the employees of the defendant. (*Delmore*, at p. 1134.) Subsequently, the plaintiff sued the defendant, which moved to compel arbitration. The district court granted the motion to compel. (*Id.* at pp. 1132–1133.)

As in the present case, the operative arbitration agreement in *Delmore* was between the plaintiff and his former employer. (*Delmore*, *supra*, 667 F.Supp.2d at p. 1135.) The court found the agreement had been assigned to the defendant when the companies merged, observing the agreement specifically stated, " 'Disputes subject to binding arbitration pursuant to this section also include claims against the Company's parent and subsidiaries, and affiliated and successor companies . . . .' " (*Ibid.*) In addition, the agreement specifically provided: " 'Employee acknowledges and agrees that in the event of the sale of the Company, or any business of the Company, this Agreement shall be assignable to any successor company, without any further consideration therefor, at the sole discretion of the Company.' " (*Ibid.*) Because the defendant had assumed all of the former company's assets, debts, rights, responsibilities, liabilities and obligations, the court found the contractual rights in the arbitration agreement had vested in the defendant, entitling it to enforce the agreement against the plaintiff. (*Ibid.*) While the arbitration agreement at issue in the present case does not contain the assignment language relied upon by the district court in *Delmore,* that case did not address, and does not stand for, the proposition that a transfer of contractual rights in the context of a business merger is ineffective in the absence of such language.

### 3. *The Offer Letter Was Not Modified*

Plaintiff contends the parties did not agree to be bound by the terms and conditions of Gray Cary's employment contracts after the merger, but the evidence he relies on is not persuasive. He first cites to a provision in the law firms' Plan of Affiliation, which states that DLA Piper "ha[d] agreed to hire Gray Cary of counsel attorneys, associates

12

and paralegals, as set forth herein, as well as certain staff, effective in each case as of January 1, 2005 . . . ." Assuming plaintiff is correct that this passage reflects DLA Piper's intent to exercise its "prerogative to pick and choose its new workforce," there is no evidence such a practice would be inconsistent with plaintiff's Offer Letter, particularly as the document explicitly provided that his employment was at-will. He also suggests that after retaining him, DLA Piper nullified the Offer Letter by distributing its own set of workplace rules, policies, and procedures governing compensation, partnership eligibility, and benefits. In support of this factual claim, he relies on a brief reference to these rules that appears in an e-mail message. The record on appeal does not contain the rules themselves. Nor does plaintiff claim these rules eliminated or modified the arbitration provision in the Offer Letter.

As in *Marenco,* the relevant law and evidence supports a finding that DLA Piper acquired all of Gray Cary's "assets, employees, rights, and liabilities." (*Marenco*, *supra*, 233 Cal.App.4th at p. 1420.) Further "[t]here is no indication that the original terms of [the plaintiff's] employment were modified, superseded, revoked, canceled, or nullified in any manner." (*Ibid*.) It is therefore reasonable to infer that Gray Cary employees who continued working after the merger "implicitly accepted [DLA Piper's] decision to maintain their existing terms of employment, including the arbitration agreement."[12] (*Ibid*.) Thus, the trial court's ruling here was consistent with "the general contract law principle that his continued employment provided implied consent to maintaining the existing terms of employment, including the arbitration agreement." (*Ibid*.) As in *Marenco,* "[o]ur determination is consistent with the established principle that '[a]

---

[12] Plaintiff again attempts to distinguish *Marenco,* asserting that the facts showed 180 Connect and DirecTV had a separate post-merger agreement that the plaintiff's employment with DirecTV would be governed by the existing employment terms. His interpretation does not appear to be consistent with the facts of that case. Far from entering into a new arbitration agreement, the plaintiff was found to have remained bound by the arbitration agreement he had entered into with 180 Connect, simply through his continued employment with the successor. (*Marenco, supra,* 233 Cal.App.4th at pp. 1419–1420.)

13

voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting.' " (*Marenco, supra,* at p. 1420, citing to Civ. Code, § 1589.)

Plaintiff further asserts the Wraparound Plan superseded the arbitration provision by acknowledging an employee's right to sue in federal court. Significantly, the document was published *after* plaintiff's employment had ended and its relevance to this appeal is therefore questionable. Moreover, the plan's description of benefits does not appear to be an employment contract. In particular, we note the plan states: "Participation in this Plan does not constitute a contract of employment between the Firm and any employee or partner." While the document does reference the right to litigate claims in a state or federal court, contrary to plaintiff's assertions, this reference is *clearly* intended to apply to claims brought under ERISA only.[13]

### D. The Termination Agreement Did Not Supersede The Offer Letter

At oral argument, plaintiff focused on the contention that the Termination Agreement superseded the arbitration clause in the Offer Letter. This claim was raised in opposition to the motion to compel, essentially maintaining the right to enforce the arbitration agreement was trumped by the 2006 Termination Agreement. The argument relies on the following integration clause contained in the Termination Agreement: "This Agreement constitutes the entire agreement between the parties *with respect to the subject matter hereof and supersedes all prior negotiations and agreements,* whether written or oral [with the exception of the prior confidentiality agreements]." We conclude this clause does not apply to the forum for resolution of disputes, as the Offer Letter does, and therefore does not cancel the Offer Letter's arbitration feature.

As DLA Piper observes, the integration clause is explicitly limited to "the subject matter hereof," namely, the terms of plaintiff's resignation. The Termination Agreement

---

[13] Plaintiff's complaint filed in the trial court specifically disclaimed any causes of action under ERISA. Further, while he subsequently added ERISA claims to his FAC, he waived any judicial forum when he voluntarily consented to submit these claims to arbitration.

14

does not mention arbitration at all, and contains no provisions regarding dispute resolution. Consequently, the *identified* forum for dispute resolution remains arbitration based on the original Offer Letter.

The leading case on this point is *Cione v. Foresters Equity Services, Inc.* (1997) 58 Cal.App.4th 625 (*Cione*).[14] In that case, a securities industry employee (Cione) entered into an agreement with the National Association of Securities Dealers, Inc. (NASD) in which he agreed to arbitrate any disputes with his employer. (*Cione*, at p. 630). Three years later, he and his employer (FESCO) entered into a written employment agreement. The agreement included an integration clause that, like the clause in the present case, did not specifically reference the arbitration agreement. (*Id.* at pp. 630–631.)

The appellate court in *Cione* held the employer was a third party beneficiary of the NASD arbitration clause: "Cione contends the superior court properly concluded his arbitration agreement with NASD . . . was rendered unenforceable by FESCO by virtue of the 'integration' clause of his written employment agreement with FESCO lacking any provision for arbitration. However, Cione's contention betrays a misunderstanding of the contract FESCO sought to enforce. FESCO did not seek to enforce its written employment agreement with Cione. Instead, as an intended third party beneficiary, FESCO sought enforcement of Cione's . . . agreement with NASD." (*Cione, supra,* 58 Cal.App.4th at p. 636.)

The appellate court in *Cione* further held that even assuming the employment agreement was wholly integrated, it did not supersede the NASD arbitration clause: "Evidence would be properly admissible ' "to prove the existence of a separate . . . agreement as to any matter on which the document is silent and is not inconsistent with its terms" . . . even though the instrument appeared to state a complete agreement. [Citations.]' [Citation.] Since the written employment agreement was silent on the

---

[14] While plaintiff seeks to limit *Cione*, *supra*, 58 Cal.App.4th 625 to the securities context, that limitation is inconsistent with *Cione's* express language and the decisions that follow it.

15

forum for dispute resolution, Cione's . . . arbitration agreement with NASD was probative and admissible as not inconsistent with the terms of such employment agreement." (*Cione, supra,* 58 Cal.App.4th at p. 639, quoting *Masterson v. Sine* (1968) 68 Cal.2d 222, 226.) Finally, *Cione* concludes its general contract analysis by declaring: "In sum, applying *general state law principles involving revocation and enforcement of contracts,* we conclude that by entering into the written employment agreement with Cione, FESCO did not waive its right to compel arbitration as a third party beneficiary of the arbitration clause contained in Cione's . . . agreement with NASD. Thus, the . . . arbitration clause was not superseded by Cione's separate written employment agreement with FESCO." (*Id.* at p. 640, italics added.)

In *Ramirez-Baker v. Beazer Homes, Inc.* (E.D. Cal. 2008) 636 F.Supp.2d 1008 (*Ramirez-Baker*), an employee sued her employer for discrimination under Title VII and state law, as well as for retaliation and breach of employment contract. Her employer sought to arbitrate the dispute based on an applicant statement signed by the plaintiff when she was hired in February 2007. (*Id.* at p. 1014.) During her employment with the defendant, the plaintiff signed subsequent agreements containing integration clauses that made no reference to arbitration or to forums for resolving employment disputes.[15] She claimed these subsequent integration clauses negated her original applicant statement's arbitration provision. The federal court rejected the argument: "The integrated clause of the employment contracts is limited to the terms of the employment contracts." (*Id.* at p. 1016, citing *Cione*, *supra*, 58 Cal.App.4th at p. 635.) The court also observed there was no showing the subsequent written employment agreements were expressly or implicitly inconsistent with her arbitration obligation. This lack of inconsistency was deemed critical even where a subsequent document purports to be a " 'complete agreement.' " (*Ramirez-Baker*, at p. 1017.) Where one agreement identifies arbitration

---

[15] The language used was: "The foregoing constitutes the entire agreement between New Home Counselor and Broker with respect to the subject matter covered, and [supersedes], cancels, and nullifies any and all prior agreements and understandings." (*Ramirez-Baker*, *supra*, 636 F.Supp.2d at p. 1016.)

16

as the forum for resolving disputes, and a subsequent agreement omits any reference to such a forum, " 'any doubts must be resolved in favor of arbitration.' " (*Id.* at p. 1017; see *Thorup v. Dean Witter Reynolds, Inc.* (1986) 180 Cal.App.3d 228, 234.)

In *Reynoso v. Bayside Management Company, LLC* (N.D.Cal. Nov. 25, 2013, 13-CV-4091 YGR) 2013 WL 6173765 (*Reynoso*), the plaintiff sued his employer based on Labor Code violations (Lab. Code, §§ 201 & 203), wrongful termination, as well as age and national origin discrimination. In 2011, the defendant required the plaintiff to sign an employment contract that included an arbitration agreement calling for binding arbitration on all "claims arising out of Employee's employment or cessation of employment . . . ." (*Reynoso*, at p. *2.) More than one year later, the plaintiff signed a new agreement which concluded with the following: "Employee understands and acknowledges that [the new agreement] constitutes the *entire agreement* regarding the terms of his employment and that this agreement may not be altered, amended[,] modified or otherwise changed except in writing with the signed approval of the Employer." (*Id* at p. *3.) This 2012 agreement contained no arbitration provision, nor did it incorporate by reference the terms of any other employee agreement.

In rejecting the plaintiff's argument that the 2012 integration clause superseded the 2011 arbitration agreement, the district court determined the integration clause applied only to the *subject matter* of the 2012 agreement, such as his at-will employment status. Following *Cione, supra*, 58 Cal.App.4th 625, the court decided the 2012 agreement did not render the Arbitration Agreement unenforceable because the language of the 2012 agreement " 'was reasonably susceptible to the meaning that it did not supersede the [arbitration agreement].' " (*Reynoso*, *supra*, 2013 WL 6173765 at p. *4, citing *Cione*, at pp. 637–640.)

Finally, the recent decision of *Ryan v. BuckleySandler, LLP* (D.D.C. 2014) 69 F.Supp.3d 140 (*Ryan*) further supports reliance on *Cione*'s rationale, and is factually similar to our case. In *Ryan,* the plaintiff, an attorney, sued his current employer for age discrimination. Originally, the plaintiff was hired in 2008 to work in the Washington, D.C., law firm of Buckley Kolar, LLP, as a temporary attorney. As a condition of

17

employment, the plaintiff signed an agreement calling for " 'final and binding arbitration' " as the " 'sole and exclusive remedy' " for claims and disputes relating to employment at the firm.  Eventually the firm became BuckleySandler, LLP.  (*Id.* at p. 142.)

After being passed over for promotions, the plaintiff was informed in January 2013 that he was being terminated.  He was presented with a separation agreement, which granted him continued medical benefits and severance pay, provided he signed a release of claims against his current employer.  The agreement also contained a merger clause that stated:  "This Agreement sets forth the entire agreement between the parties with respect to the subject matter hereof and supersedes any and all prior agreements and understandings between them pertaining to such subject matter."[16]  (*Ryan, supra,* 69 F.Supp.3d at p. 143.)  The agreement did not provide any forum to resolve disputes arising out of the termination agreement.  (*Ibid.*)

After suing the defendant, the plaintiff claimed the separation agreement superseded the former firm's arbitration clause.  The district court determined the integration clause in the separation agreement was "expressly limited to the subject matter of the Separation Agreement."  That agreement "is silent as to the forum for resolution of those claims.  In this sense, the Arbitration Agreement (which mandates the forum for the resolution of claims) concerns a distinct subject matter from the Separation Agreement (which addresses the employment law claims of the defendant)."  (*Ryan, supra*, 69 F.Supp.3d at pp. 145–146.)  The opinion went on to observe "courts throughout the country have enforced pre-existing arbitration agreements when a subsequent agreement does not address the issue of arbitration."  (*Id.* at p. 146.)

Plaintiff relies on *Grey v. American Management Services* (2012) 204 Cal.App.4th 803 (*Grey*), but that case is distinguishable.  In *Grey,* the appellate court considered whether an employment contract containing an integration clause operated to negate an

---

[16] This clause in *Ryan*, *supra*, 69 F.Supp.3d 140, contains essentially the same language we consider here.

arbitration provision contained in a document the employee had signed when he submitted his job application. (*Id*. at pp. 805–806.) The *Grey* court held the later contract superseded the previous agreement, explaining that because "the [employment] contract says it is the entire agreement, common sense dictates that it supersedes other prior agreements related to Grey's employment." (*Id*. at p. 807.)[17]

As is apparent, *Grey* is distinguishable from the present case, and from *Cione,* in that the relevant contract at issue in *Grey* did not contain the limiting "with respect to the subject matter of" language found in both the *Cione* NASD contract and the Termination Agreement here. (Compare *Cione*, *supra*, 58 Cal.App.4th at p. 631 [" 'This Agreement contains the entire understanding of the parties hereto *with respect to the subject matter contained herein*. There are no restrictions, promises, representations, warranties, covenants or undertakings, other than those expressly set forth or referred to in this Agreement' " (italics added)] to *Grey, supra*, 204 Cal.App.4th at p. 807 [" 'This Agreement *is the entire agreement* between the parties in connection with Employee's employment with [employer], and supersedes all prior and contemporaneous discussions and understandings' " (italics added)].) Plaintiff's efforts to distinguish *Cione* ignore this limiting language. Further, that *Cione* concerned a securities industry registration form, rather than a bilateral employment agreement, is a distinction without a difference with respect to whether the parties intended to preclude enforcement of the arbitration provision.[18]

---

[17] The temporal feature in *Grey* is critical. Grey applied for a position with American Management Services sometime in June 2006 and his packet contained an issues resolution agreement, which he signed. On July 3, 2006, *days* after the signing, Grey signed an employment contract that contained a modified arbitration agreement. The appellate court viewed this contract as the controlling agreement of the parties. The contract reflected, by its terms and in light of the timing of the documents signed, the final expression of the parties' *original* agreement regarding Grey's employment. (*Gray*, *supra*, 204 Cal.App.4th at p. 807.)

[18] Again, because it is not a contract, and because it was not published until after plaintiff's employment ceased, we conclude the Wraparound Plan also did not supersede the arbitration agreement.

It is also significant that the appellate court in *Cione*, *supra*, 58 Cal.App.4th 625, relied on the fact that the FESCO agreement was silent with respect to arbitration in concluding the employer had not waived its right to compel arbitration under the earlier NASD agreement. In the present case, the Termination Agreement also is silent with respect to dispute resolution. We therefore conclude the parties did not intend to override the arbitration provision contained in the Offer Letter when they entered into the Termination Agreement.

## III. *Denial of Motion for New Trial*

Plaintiff also asserts the trial court relied on improper procedural grounds in confirming arbitration and denying his new trial motion. We need not consider this point as we have already concluded his arguments against arbitrability fail on their merits.

### DISPOSITION

The judgment is affirmed.

_____
DONDERO, J.

We concur:

_____
MARGULIES, Acting P.J.

_____
BANKE, J.

20

| | |
|---|---|
| Trial Court | San Francisco County Superior Court |
| Trial Judge | Hon. Charlotte Walter Woolard<br>Hon. Ernest H. Goldsmith |
| Counsel for Plaintiff and Appellant<br>M. Todd Jenks | Altshuler Berzon LLP<br>Michael Rubin<br>Connie K. Chan |
| Counsel for Defendant and Respondent<br>DLA Piper Rudnick Gray Cary US LLP | Arnold & Porter LLP<br>David J. Reis<br>Christopher T. Scanlan |