Filed 10/25/22  Carothers v. Carothers Disante & Freudenberger CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DAVE CAROTHERS,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CAROTHERS DISANTE &<br>FREUDENBERGER LLP,<br><br>    Defendant and Appellant. | B313290<br><br>(Los Angeles County<br>Super. Ct. No.<br>20STCV39320) |

APPEAL from a judgment of the Superior Court of Los Angeles County, John P. Doyle, Judge.  Affirmed.

Akerman, Damien P. DeLaney, and Brian M. Noh for Defendant and Appellant.

Miller Barondess, Mira Hashmall, and Erik L. Wilson for Plaintiff and Respondent.

Defendant and appellant Carothers DiSante & Freudenberger, LLP (CDF), a law firm, appeals from denial of its motion to compel arbitration of employment discrimination and retaliation claims filed against it by its erstwhile partner, plaintiff and respondent Dave Carothers (Carothers). CDF moved to compel arbitration of Carothers's claims based on an arbitration clause in the partnership agreement that Carothers signed when he became an equity partner at the firm—though he later transitioned to a non-equity partner role governed by an employment agreement. We principally consider whether any of Carothers's claims against CDF fall within the scope of the arbitration provision that applies to disagreements concerning the "interpretation, application, breach or enforcement" of the equity partnership agreement or "any question arising [there]under."

## I. BACKGROUND

### A. *Carothers's Tenure at CDF*

Our recitation of the facts concerning Carothers's tenure at CDF is as alleged in his operative complaint.

Carothers, a Black man, became an equity partner in CDF in the early 2000s.[1] In 2017, Carothers began suffering from health issues. In or around the fall of 2018, Carothers obtained a diagnosis for his condition, and learned it would require surgery. When he disclosed his symptoms to CDF, he received comments like, "'That's what happens when you get old.'"

---

[1] When Carothers joined the firm, CDF stood for Carlton DiSante & Freudenberger. In 2011, CDF changed its name to "Carothers DiSante & Freudenberger" in recognition of Carothers's contributions to the firm.

Later that year, CDF did not give Carothers his year-end payout, which typically represented about 40 percent of his annual compensation. When asked why, CDF said it withheld the compensation because one of Carothers's clients, for whom he achieved a favorable result at trial in Vista, had only paid about half of its bill (the Vista matter). Carothers had not seen a payout withheld due to a collections issue before.

Carothers was out of the office on medical leave from January to July 2019, but he continued working during that time. He was "stripped of his partner status," cashed out his equity in the firm to pay his medical bills, and, in May 2019, underwent surgery.[2] Carothers eventually learned a powerful partner at the firm had told others during Carothers's medical leave that Carothers was not returning to the firm and would instead retire.

In June 2019, Carothers signed an "Agreement of Employment" pursuant to which he was employed as a non-equity partner at CDF, and was to be paid $325,000 per year—which was about 50% less than he had been earning previously. The employment agreement did not contain an arbitration clause. Carothers did not receive a year-end bonus in 2019.

In January 2020, CDF informed Carothers he would be personally charged for time a firm associate billed on the Vista matter, but the firm later relented and agreed it could not penalize him twice for the same billing issue. The following month, CDF reduced Carothers's compensation again, stating it

_____

[2] According to the declaration of CDF partner David Hagopian, Carothers resigned from the partnership effective December 31, 2018.

was doing so because the firm's Executive Committee "was not impressed with his numbers." Carothers asked CDF to show him the financials and asked for an accounting of the money CDF had "'charged'" him for personnel time on the Vista matter. CDF did not provide him with the financials or the accounting.

In April 2020, CDF announced it was reducing all attorney compensation by 20% due to the COVID-19 pandemic. CDF told Carothers, however, that his compensation would be reduced by 30%. When asked why Carothers's reduction was greater, the firm referenced the collections issue with the Vista matter.

In June 2020, Carothers, as co-chair of CDF's Diversity and Inclusion Committee, drafted a statement on behalf of the firm denouncing George Floyd's murder and sent it to the Executive Committee. The Executive Committee told the Diversity and Inclusion Committee and Carothers not to say anything publicly. Carothers subsequently resigned from the Diversity and Inclusion Committee. Carothers later learned a white partner at the firm had posted an article on the firm's LinkedIn account stating an investigation into a racist NASCAR incident was a waste of time.

In August 2020, Carothers received an offer to preside over a large and significant arbitration through the American Arbitration Association. The Executive Committee told Carothers he could not accept the offer and created a policy justifying their decision. The other name partners at the firm later suggested Carothers should leave the firm and perform arbitrations for a living.

Carothers resigned from CDF in late September 2020. On October 9, 2020, he received an immediate right-to-sue notice

from the California Department of Fair Employment and Housing.

### B. *Carothers's Lawsuit Against CDF*

In October 2020, Carothers filed a four-count complaint against CDF. The first cause of action, for constructive discharge in violation of public policy, alleged CDF engaged in unlawful retaliation against Carothers for his protected medical leave and severe health issues, his age, and his complaints about discrimination and harassment on the basis of race. The constructive discharge claim further alleged these facts were substantial motivating reasons for CDF's decisions to demote him; to punitively cut his pay and deny him access to firm financials; to silence his efforts to speak out against racism; and to disparage him, humiliate him, and push him out of the firm.

The second cause of action alleged a claim under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) for retaliating against him for complaining of discrimination and harassment. The third cause of action for discrimination on the basis of age, race, and physical disability alleged CDF discriminated against Carothers on the basis of his age, medical condition, and race, in violation of FEHA. The fourth cause of action for failure to prevent discrimination and retaliation alleged CDF had an affirmative duty under FEHA to prevent discrimination and retaliation but it failed to take all reasonable steps to prevent Carothers from being subjected to discrimination and retaliation, including by doing nothing when an employee posted on LinkedIn that investigating a potentially racist incident was a waste of time, by failing to correct employees' degrading comments about Carothers's age and

medical condition, and by not criticizing an employee who referred to Carothers as a coward for trying to affirm CDF cared about diversity and inclusion.

C. *The Motion to Compel Arbitration*
  1. *CDF's motion and the arbitration clause at issue*

CDF filed a motion to compel arbitration contending the partnership agreement Carothers signed while an equity partner contained an arbitration clause that required arbitration of all of Carothers's claims. In support of its motion, CDF submitted the declaration of David Hagopian, a partner at, and general counsel for, CDF. Hagopian averred Carothers signed the partnership agreement when he first became a partner at the firm and signed or consented to that same agreement during the following 16 years, including as late as 2018.

Hagopian's declaration attached the 2018 partnership agreement, which states Carothers was admitted to the partnership as a partner in 2002. The agreement represents it "memorializes the agreements" of the partners. The agreement describes, among other things, the composition and purpose of the partnership, the procedures for partnership admission, withdrawal, and expulsion, ownership percentages and voting, capital, distributions, income and losses, and the rights and duties of partners.

The agreement contains a "Governing Law" clause which provides: "The laws of the State of California shall govern the validity, enforceability and all other matters pertaining to this Agreement, the construction of its terms, and the rights and duties of the Partners." More importantly for purposes of this

appeal, the agreement includes a "Dispute Settlement" provision that states (with emphasis ours):  "If there is any disagreement between or among the Partnership, the Partners, or any former Partner, or the estate or any beneficiary or legal representative of any Partner or former Partner, *concerning the interpretation, application, breach or enforcement of this Agreement, or any question arising hereunder*, which dispute cannot be settled after reasonable efforts by the disputing parties, then they shall mutually agree on a third party, who shall be an attorney who is a member of the California State Bar Association, with at least 15 years['] experience as a practicing lawyer, and such third party shall hear the matter and settle and determine any such dispute.  The decision of the third party shall be final and binding upon the disputing parties in all respects.  If the disputing parties cannot agree on such third party within 30 days, then upon request of any one of them to the President of the Orange County Bar Association, such President shall appoint an attorney as an arbitrator, who shall meet the qualifications set forth above, and the decision of the individual so appointed shall have the same binding force and effect as if the disputing parties had mutually agreed to him or her.  All parties to any such dispute shall share the costs and fees of the third party in equal shares."

### 2.    *Carothers's opposition*

Carothers opposed the motion to compel arbitration on three principal grounds.  He argued that his claims fell outside the scope of the partnership agreement's arbitration provision; that the employment agreement he signed in 2019, which includes no arbitration clause, in any event superseded the

7

partnership agreement; and that the arbitration clause is unconscionable and unenforceable.

In support of his opposition, Carothers submitted evidence, including the 2019 employment agreement he signed. That agreement specified Carothers was employed as a non-equity partner and provided it "sets forth the entire offer and agreement between [Carothers] and the firm and supersedes any and all prior oral or written agreements, negotiations, discussions, or understandings between [Carothers] and the firm concerning [his] employment with the firm."

### 3. *The trial court's ruling*

The trial court denied CDF's motion to compel arbitration. The court was not convinced that the 2019 employment agreement superseded the previously executed partnership agreement (it believed the employment agreement would supersede earlier employment agreements, but the partnership agreement was not an employment agreement), but the court found the partnership agreement's arbitration provision did not encompass the claims brought in Carothers's lawsuit. The trial court reasoned those claims were based on conduct that occurred during the time he was an employee, not a partner, and the partnership agreement's arbitration provision therefore did not apply.[3] The court also emphasized that if CDF, a law firm,

---

[3] CDF had argued its partners (among themselves) were not subject to anti-discrimination laws. In the trial court's view, if anti-discrimination laws did not apply to partners, the partnership agreement's arbitration provision could not encompass the anti-discrimination and retaliation claims brought by Carothers.

8

wanted to require arbitration of the sort of claims brought by Carothers, it could have included (but did not include) an arbitration provision in Carothers's non-equity partnership employment agreement to ensure such claims would be covered.

## II.  DISCUSSION

The trial court reached the correct result.  Carothers's discrimination claims do not concern "disagreement[s] . . . concerning the interpretation, application, breach or enforcement" of the partnership agreement, nor are they disagreements concerning any question arising under that agreement.  The partnership agreement's arbitration provision, by its express terms, applies solely to disagreements that spring from the terms *of the agreement* and questions arising *under the agreement*.  As we proceed to explain, Carothers's claims are neither.

"[U]nder both state and federal law, there is a strong policy favoring arbitration.  [Citation.]" (*Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042, 1051.)  "There is no public policy, however, that favors the arbitration of disputes the parties did not agree to arbitrate." (*Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 890.)

"In considering the language of the . . . agreement's arbitration provision, we apply the ordinary rules of contract interpretation." (*EFund Capital Partners v. Pless* (2007) 150 Cal.App.4th 1311, 1321.)  "'The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the "mutual intention" of the parties.  "Under statutory rules of contract interpretation, the mutual intention of the parties at

the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.,* § 1639.) The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' (*id.,* § 1644), controls judicial interpretation. (*Id.,* § 1638.)'" [Citation.]" (*Ameron Internat. Corp. v. Insurance Co. of State of Pennsylvania* (2010) 50 Cal.4th 1370, 1378.)

To reiterate, the arbitration provision at issue in this case states in pertinent part that "any disagreement between or among the Partnership, the Partners, or any former Partner, or the estate or any beneficiary or legal representative of any Partner or former Partner, concerning the interpretation, application, breach or enforcement of this Agreement, or any question arising hereunder" shall be submitted to a mutually agreed upon third party for binding resolution. The first portion of this clause renders a discrete category of claims subject to arbitration: those that concern the interpretation, application, breach or enforcement of the agreement itself. The second portion of the clause makes disagreements concerning questions that arise under the agreement subject to arbitration. Importantly, both clauses are expressly tethered to the terms of the partnership agreement and neither includes broader language that would encompass claims independent of the agreement or even any claim that "relates to" or "concerns" the agreement generally.

Turning back to the specifics of Carothers's complaint, it alleges CDF constructively discharged him in violation of public policy and discriminated and retaliated against him based on his

10

health issues, age, and race. His causes of action do not seek interpretation or application of the partnership agreement. Nor is there a claim that the agreement was breached or a request to enforce it. As such, Carothers's claims obviously do not fall within the scope of the first clause of the arbitration provision.

We reach the same conclusion with respect to the arbitration provision's second clause requiring arbitration of "any question arising" under the partnership agreement. As a matter of plain meaning, Carothers's causes of action do not raise questions arising under the partnership agreement. The vast majority of the incidents Carothers alleges as the bases for his claims took place after Carothers signed the employment agreement in June 2019 stating he had become a non-equity partner.[4] It perhaps goes without saying, but actions taken while Carothers and CDF were operating under the terms of the employment agreement cannot reasonably be said to arise under the partnership agreement.

The complaint does also include a few allegations that are apparently based, at least in part, on incidents that took place

_____

[4] For example, Carothers' claim that CDF denied him access to firm financials is based on the allegation that Carothers asked CDF for those records in connection with a February 2020 reduction in his salary. His claim that CDF punitively cut his pay refers to events including the decrease in his salary when he became a non-equity partner and the February and April 2020 reductions in his compensation. The claim that CDF silenced his efforts to speak out against racism is based on his allegations related to the statement he drafted following George Floyd's murder in June 2020.

11

before Carothers was a non-equity partner.[5]  Although these allegations are accordingly not as obviously excluded from the arbitration provision on a temporal basis, they still do not concern questions arising under the agreement.  Broadly speaking, these allegations assert CDF discriminated and retaliated against Carothers and this discrimination or retaliation substantially motivated the actions CDF took.  Resolving these claims does not require resolution of any question arising under the partnership agreement.  Indeed, any employee of the firm, whether a signatory of the partnership agreement or not, could have brought the sort of claims Carothers alleges in his complaint.

CDF's counterarguments concerning the scope of the arbitration provision are all unconvincing.  CDF argues the claims fall within the scope of the arbitration provision because they originate from Carothers's compensation and work as an equity partner and necessarily involve his relationship to the firm as either a partner or former partner.  The argument, in other words, seems to be that any dispute between Carothers and the firm in perpetuity must be arbitrated because Carothers would always be a "former partner" of the firm and any dispute is accordingly "rooted in" the partnership agreement because that

---

[5]     These include the allegation that Carothers was demoted and the allegations that CDF made or failed to prevent derogatory or discriminatory comments about him while he was an equity partner (the "[t]hat's what happens when you get old" comment and the allegation that others were told Carothers was not returning while he was on medical leave).

agreement makes reference to former partners.[6]  That is doubly wrong.

First, by the time of the pertinent allegations, Carothers had a new relationship with CDF governed by that employment agreement.  Claiming that all of his disputes with CDF continue to be rooted in the partnership agreement ignores this fundamental change.  If CDF had intended the arbitration clause to apply broadly enough to encompass any claim against the firm asserted by a "former partner" who then became non-equity partner employee, it could have easily drafted a provision to say so.[7]  Second, we do not believe the partnership agreement's mere

---

[6]    CDF's argument stems at least in part from its contention that the arbitration clause in the partnership agreement should be characterized as "broad" rather than "narrow."  While characterizing the breadth of an arbitration clause may be a helpful analytical aid in some circumstances, the issue of whether a claim is covered by an arbitration clause "is not resolved simply by determining whether the arbitration clause is narrow or broad, whether the arbitration clause *could* encompass tort claims, or even whether the claims in issue sound in tort, not contract."  (*Rice v. Downs* (2016) 248 Cal.App.4th 175, 187.)  The issue is resolved by determining whether the claims asserted in the complaint are encompassed by the specific terms of the arbitration clause.

[7]    The cases upon which CDF relies for its proposition that Carothers's claims are rooted in the partnership agreement are inapposite.  None involve a situation where, as here, the parties ended one continuing relationship and commenced another.  (*Jenks v. DLA Piper Rudnick Gray Cary US LLP* (2015) 243 Cal.App.4th 1; *Vianna v. Doctors' Management Co.* (1994) 27 Cal.App.4th 1186; *Merrick v. Writers Guild of America, West, Inc.*

reference to former partners means any claim by a former partner against the firm must be arbitrated.  Rather, it is only questions arising under the partnership agreement that must be arbitrated (e.g., a hypothetical question of whether the agreement was validly amended) and Carothers's discrimination and retaliation claims do not raise such questions despite his status as a former partner.[8]

---

(1982) 130 Cal.App.3d 212; *Ramirez-Baker v. Beazer Homes, Inc.* (E.D. Cal. 2008) 636 F.Supp.2d 1008.)

[8]  CDF, for instance, argues the claim that Carothers was demoted must be resolved in the context of the provision of the partnership agreement that enumerates the bases on which an equity partner can be expelled from the partnership.  But Carothers does not allege any application or breach of the expulsion provision, or any procedural impropriety.  Instead, he alleges he was demoted for discriminatory and retaliatory reasons.  The factual allegation from which this claim appears to arise states only that Carothers was stripped of his partner status.

CDF also contends that Carothers's payment-related claims (and, indeed, his overarching claim that he suffered damages) are dependent on the partnership agreement.  But how Carothers's earnings under the partnership agreement were determined has no bearing on whether the amount of money Carothers was paid pursuant to his later employment agreement was a product of discrimination or retaliation.  (We do not read the complaint to include withholding the 2018 year-end distribution in Carothers's claim that CDF "cut his pay."  Fairly read, the claim encompasses the allegations related to Carothers's salary under the employment agreement and subsequent reductions of that salary.)

14

DISPOSITION

The order denying CDF's motion to compel arbitration is affirmed.  Carothers shall recover his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.

We concur:


RUBIN, P. J.


KIM, J.