Filed 8/14/20 (opinion on rehearing)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THOMAS JARBOE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>HANLEES AUTO GROUP et al.,<br><br>        Defendants and Appellants. | A156411<br><br>(Alameda County<br>Super. Ct. No. RG17887089) |

## I.     INTRODUCTION

Plaintiff Thomas Jarboe[1] was hired by DKD of Davis, Inc., doing business as Hanlees Davis Toyota (DKD of Davis).  Shortly after he began working, Jarboe was transferred to Leehan of Davis, Inc., doing business as Hanlees Chrysler Dodge Jeep Ram Kia (Leehan of Davis).  Following his termination at Leehan of Davis, Jarboe brought this wage and hour action individually and on behalf of a putative class against the Hanlees Auto Group (Hanlees), its 12 affiliated dealerships, including DKD of Davis and Leehan of Davis, and three individual defendants, Dong K. Lee, Kyong S. Han, and Dong I. Lee (collectively defendants).  Defendants moved to compel arbitration based on an employment agreement between Jarboe and DKD of Davis.  The trial court granted the motion as to 11 of the 12 causes of action

---

[1]  Following various amendments and dismissals, Jarboe replaced Richard Parr as the named plaintiff in the second amended complaint, which is operative complaint on appeal.

against DKD of Davis, but denied the motion as to the other defendants. The trial court also allowed Jarboe's claim under the Private Attorneys General Act of 2004 (PAGA), Labor Code section 2698 et seq. to proceed in court against all defendants. The trial court refused to stay the causes of action allowed to proceed in litigation pending arbitration of Jarboe's claims against DKD of Davis. (See Code Civ. Proc., § 1281.4).

Hanlees, its affiliated dealerships, and the individual defendants contend they are entitled to enforce the agreement to arbitrate between Jarboe and DKD of Davis as third party beneficiaries of Jarboe's employment agreement or under the doctrine of equitable estoppel. The record fails to support either theory. Neither did the trial court err in failing to stay the litigation under Labor Code section 1281.4. Accordingly, we affirm.

## II. BACKGROUND

Hanlees is a group of automobile dealerships in Northern California. The dealerships function as separate corporate entities.[2] Three individual defendants own the Hanlees group (individual owners).

As part of the hiring process, Jarboe was required to sign two separate agreements, each containing an arbitration provision (Arbitration

---

[2] The individual dealerships are: Hanlees Davis, Inc., doing business as (dba) Hanlees Davis Toyota; Hanlees Freemont, Inc., dba Hanlees Freemont Hyundai; Hanlees Hilltop, Inc., dba Hanlees Hilltop Toyota; Hanlees Napa, Inc., dba Hanlees Napa Subaru and Volkswagen; Hanlees Seven, Inc., dba Hanlees Hilltop Hyundai; DKD of Napa, Inc., dba Hanlees Chrysler Dodge Jeep Ram of Napa; DKD of Hilltop, Inc., dba Hilltop Buick GMC; Dohan, Inc., dba Hanlees Chevrolet; Leehan, Inc., dba Hanlees Hilltop Nissan; LHN, Inc., dba Hanlees Hilltop Volkswagen; Leehan of Davis, Inc., dba Hanlees Chrysler Dodge Jeep Ram Kia; and DKD of Davis, Inc., dba Hanlees Davis Toyota.

Agreements)[3]. Both agreements were form contracts offered on a non-negotiable, take-it or leave it basis, with little or no time for Jarboe to review them.

The first agreement, electronically signed by Jarboe on August 4, 2017, is entitled "Applicant Statement and Agreement" (Application). The Application is one page, and consists of six paragraphs, all in identical and small—nearly impossible to read—font. None of the six paragraphs is labeled or titled, in boldface or otherwise. The last sentence of the first paragraph provides: "I hereby authorize the Company with which I have applied for employment to share my Application for Employment with other affiliated companies/employers, and hereby agree that all terms, conditions and/or agreements contained in this Applicant's Statement and Agreement . . . shall be enforceable by me and by such other companies/employers . . ., even though I have not signed a separate Applicant's Statement and Agreement for those other companies/employers." Nowhere in the Application are the terms "Company," "companies," "affiliated companies" or "employers" defined.

The fourth paragraph of the Application refers to arbitration. This paragraph is almost 35 lines and ends with these three sentences: "If CCP § 1284.2 conflicts with other substantive statutory provisions or controlling case law, the allocation of costs and arbitrator fees shall be governed by said statutory provisions or controlling case law instead of CCP § 1284.2. Both the Company and I agree that any arbitration proceeding must move forward under the Federal Arbitration Act (9 U.S.C. §§ 3–4) even though the claims may also involve or relate to parties who are not parties to the arbitration

---

[3] We refer to the Arbitration Agreements collectively. Where necessary to our analysis, we will differentiate among the agreements as the "Application" and "Employment Agreement."

agreement and/or claims that are not subject to arbitration; thus, the court may not refuse to enforce this arbitration agreement and may not stay the arbitration proceeding despite the provisions of California Code of Civil Procedure § 1281.2(c). I UNDERSTAND BY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH I AND THE COMPANY GIVE UP OUR RIGHTS TO TRIAL BY JURY."

The second agreement, which Jarboe signed in ink on August 10, 2017, is entitled "Agreements" and is between DKD of Davis, as the named "Company" and Jarboe as the named "Employee" (Employment Agreement). The Employment Agreement contains two boldfaced paragraphs, the first of which is entitled "At Will Employment Agreement." This first paragraph concludes with the following advisement: "This agreement is the entire agreement between the Company and the employee regarding the rights of the Company or employee to terminate employment with or without good cause and this agreement takes the place of all prior and contemporaneous agreements, representations, and understandings of the employee and the Company." The second paragraph is entitled "Binding Arbitration Agreement." It is 43 lines, without indentation, included within which is a sentence that is alone 11 lines.[4]

---

[4] The sentence reads as follows: "Because of the mutual benefits (such as possible reduced expense and possible increased efficiency) which private binding arbitration can provide both the Company and myself, I and the Company both agree that any claim, dispute, and/or controversy that either party may have against one another (including, but not limited to, any claims of discrimination and harassment, whether they be based on the California Fair Employment and Housing Act, Title VII of the Civil Rights Act of 1964, as amended, as well as all other applicable state or federal laws or regulations) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and the Company (or its owners, directors, officers, managers, employees, agents, and

4

Jarboe worked at Hanlees Toyota for approximately one month before he was transferred to Hanlees Kia in September 2017, where he worked until his termination in January 2018. The compensation reports Jarboe received while working at Hanlees Kia referred to his employer as "Leehan of Davis, Inc dba Hanlees [Chrysler Dodge Jeep Ram Kia]."

After he was terminated in 2018, Jarboe filed this putative class action against Hanlees, its 12 affiliated dealerships, and the three individual owners, alleging numerous Labor Code violations, including: failure to provide meal and rest periods; failure to pay overtime compensation; failure to pay for all hours worked; and failure to pay for waiting time compensation. In addition to various tort claims, including fraud and conversion, the complaint alleges an unfair competition claim, as well as a PAGA claim. All but one cause of action are asserted against "All Defendants" without differentiation. The fifth cause of action (failure to timely pay all earned wages in violation of Lab. Code, § 204) is alleged solely against the Hanlees group. The complaint seeks damages and injunctive relief, as well as civil penalties under the PAGA.

Defendants moved to stay the action and compel arbitration. The court determined that there was an enforceable arbitration agreement, finding evidence that Jarboe electronically signed the Application and ink signed the

_____

parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company, whether based on tort, contract, statutory, or equitable law, or otherwise[] (with the sole exception of claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under the California Workers' Compensation Act, and Employment Development Department claims)[,] shall be submitted to and determined exclusively by binding arbitration."

Employment Agreement. While the Employment Agreement was procedurally unconscionable it was not substantively unconscionable. Except for Jarboe's individual claims against DKD of Davis, the court denied the motion to compel. The court determined that the defendants failed to establish that the Employment Agreement applied to entities other than the named "Company": DKD of Davis. The court also determined that Jarboe's PAGA cause of action could proceed in court because an employee "bringing a PAGA action . . . is not acting on his or her own behalf, but on behalf of the state and the state is not bound by the employee's prior agreement, including any waiver of his right to bring a representative action." The court denied defendants' motion to stay the PAGA claim pending completion of the arbitration of Jarboe's private claims.

## III. DISCUSSION

### A.   *Standards of Review*

On appeal from an order denying a petition to compel arbitration, we review the trial court's factual determinations under the substantial evidence standard, and we review the legal issues independently. (*Duick v. Toyota Motor Sales, U.S.A., Inc.* (2011) 198 Cal.App.4th 1316, 1320; *Provencio v. WMA Securities, Inc.* (2005) 125 Cal.App.4th 1028, 1031.) Specifically, we independently consider the question of whether and to what extent a nonsignatory may enforce an arbitration agreement. (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 708; *DMS Services, LLC v. Superior Court* (2012) 205 Cal.App.4th 1346, 1352 (*DMS Services*).)

Although an order denying a stay of proceedings is not generally appealable, it is reviewable on appeal from an order denying arbitration because the denial of stay affects the order appealed from and substantially

6

affects the rights of the appellant. (*J.H. Boyd Enterprises, Inc. v. Boyd* (2019) 39 Cal.App.5th 802, 811–812.) A trial court's decision whether to stay an action at law when a controversy has been ordered to arbitration is reviewed for an abuse of discretion. (See *Cardiff Equities, Inc. v. Superior Court* (2008) 166 Cal.App.4th 1541, 1548.)

## B. The Trial Court Correctly Refused to Compel Arbitration

Defendants contend that the trial court erred by concluding the arbitration provision in the Employment Agreement was limited to its signatories. Defendants argue that Hanlees, its affiliated dealerships, and the individual owners were entitled to compel arbitration either under the terms of the agreement, as third party beneficiaries or under the theory of equitable estoppel.

### 1. Legal Principles

Under federal and state law, a strong public policy favors arbitration and seeks to ensure " 'private agreements to arbitrate are enforced according to their terms.' " (*Stolt-Nielsen S.A. v. AnimalFeeds Internat. Corp.* (2010) 559 U.S. 662, 664; see *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.) However, " ' "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . ." ' " (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 744; accord, *Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 858–859 (*Cohen*); *Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 17 (*Jones*).) " '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit.' " (*AT&T Technologies. v. Communications Workers* (1986) 475 U.S. 643, 648; *Cohen*, at pp. 855, 857–858.)

"The United States Supreme Court has stated that '. . . the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.' (*Mitsubishi Motors v. Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 626.)" (*Cheng-Canindin v. Renaissance Hotel Associates* (1996) 50 Cal.App.4th 676, 683.) "The performance of this duty necessarily requires the court to examine and, to a limited extent, construe the underlying agreement." (*Freeman v. State Farm Mutual Auto. Ins. Co.* (1975) 14 Cal.3d 473, 480.) "It is, of course, possible for the parties to agree that the arbitrator may determine the scope of his authority. 'The arbitrability of a dispute may itself be subject to arbitration if the parties have so provided in their contract.' [Citation.] Even then, it is necessary for the court to examine the contract to ascertain whether the parties 'have so provided.' [Citations.]" (*Ibid.*) Contractual language empowering the arbitrator to determine arbitrability must be clear and unmistakable. (*Green Tree Financial Corp. v. Bazzle* (2003) 539 U.S. 444, 452 (*Green Tree*); *AT & T Technologies, Inc. v. Communications Workers* (1986) 475 U.S. 643, 649; *United Public Employees v. City and County of San Francisco* (1997) 53 Cal.App.4th 1021, 1026.)

Here, there is no clear and unmistakable language that empowers the arbitrator to determine whether a valid agreement to arbitrate exists. Accordingly, as the reviewing court, we will make this determination. Hanlees' citation to *Green Tree* does not change our conclusion. In *Green Tree,* an arbitration clause in a contract between a lender and its customer provided that "[a]ll disputes, claims, or controversies arising from or relating to this contract or the relationships which result[ed] from this contract . . . [would] be resolved by binding arbitration by one arbitrator selected by us with consent of you." (*Id.* at p. 448, italics omitted.) A

plurality of the court ruled that the question of whether the agreement was silent on class arbitration was for the arbitrator to decide. The parties agreed to submit all disputes arising from or related to the contract to the arbitrator, and the dispute related to the contract and the resulting relationships. (*Id.* at pp. 451-452.) The plurality decision in *Green Tree*, however, has nothing to do with the issue in this case — whether the arbitration agreement applies to nonsignatories.

An entity seeking to compel arbitraion must generally establish it was a party to an arbitration agreement. (*DMS Services, supra,* 205 Cal.App.4th at pp. 1352–1353; *JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1236.) Only in limited circumstances may an arbitration agreement be enforced by nonsignatories. One such circumstance is where a benefit is conferred on the nonsignatory as a result of the agreement, making the nonsignatory a third party beneficiary of the arbitration agreement. (*Jensen v. U-Haul Co. of California* (2017) 18 Cal.App.5th 295, 301.) Another is when the equitable estoppel doctrine applies and a nonsignatory is allowed to enforce an arbitration clause because the claims against the nonsignatory are dependent on, or inextricably intertwined with, the contractual obligations of the agreement containing the arbitration clause. (See *Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 229–230; *Jensen,* at p. 306; *Jones*, *supra*, 195 Cal.App.4th at p. 20; *Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262, 271–272 (*Boucher*); see also *JSM Tuscany*, at pp. 1237–1239.)

2.      *Standing of the Individual Owners*

Defendants argue that express language of both the Application and the Employment Agreement requires Jarboe to arbitrate his employment-related claims against the individual owners. In support of their position,

9

defendants cite the following language from the Application: "I and the company both agree that any claim . . . that either party may have against one another . . . which would otherwise require or allow resort to any court or other governmental dispute resolution forum *between myself and the Company (or its owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans)* arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company . . . shall be submitted to and determined exclusively by binding arbitration." (Italics added.) In isolation, this reference in the Application to "owners" would appear to support defendants' position that Jarboe is required to arbitrate his claims against the individual defendants.

Although defendants contend the Employment Agreement contains the same operative language, there is an important difference. Unlike the Application, the Employment Agreement defines the "Company." It is DKD of Davis. Thus, even if the individual defendants have standing to compel arbitration as "owners" of the company, it is in the limited context of their ownership of DKD of Davis, the "Company" named in the Employment Agreement. Jarboe's claims against DKD of Davis were ordered to arbitration.

### 3. *Third Party Beneficiary Status*

To enforce the Employment Agreement as third party beneficiaries, defendants had to show that the Arbitration Agreements between Jarboe and DKD of Davis were made *expressly* for their benefit. (Civ. Code, § 1559; *Ronay Family Limited Partnership v. Tweed* (2013) 216 Cal.App.4th 830, 838.) It is not enough that a literal interpretation of the agreements would benefit Hanlees and the other dealerships. (*Vahle v. Barwick* (2001) 93

10

Cal.App.4th 1323, 1328.) It was defendants' burden to prove that the agreements were intended to benefit them. (*City of Hope v. Brian Cave, L.L.P.* (2002) 102 Cal.App.4th 1356, 1370 (*City of Hope*).) They failed to do so.

To the extent defendants are suggesting that the so-called "common employment application" is evidence that the arbitration provisions were intended for their collective benefit, they did not make this argument to the trial court. It is forfeited on appeal for their failing to do so. (See *Vikco Ins. Services, Inc. v. Ohio Indemnity Co.* (1999) 70 Cal.App.4th 55, 66–67 [issues or theories not properly raised before trial court will not be considered on appeal].) This argument also fails on the merits.[5]

Defendants argue that the Application was used to apply to all dealerships within the Hanlees auto group and, as such, the Application did not limit the definition of "Company" to one specific named dealership. Defendants support this contention with Jarboe's declaration wherein he states that he "applied for work at Hanlees through an online employment application." Jarboe further states that he "understood that in order to apply for employment and ultimately be employed by Hanlees [he] had to fill out the entire application or else it would not process." According to defendants, the significance of the common employment application is that its definition of "Company" necessarily meant the Hanlees group, and, as such, all of its affiliated dealerships were intended third party beneficiaries of the

---

[5] At oral argument, Hanlees argued that it had in fact raised the issue of the common employment application in the trial court. Our review of the record, specifically the pages cited by appellate counsel at argument, does not support this contention. Hanlees did argue the dealerships had "common ownership," but it did not argue, as defendants contend on appeal, that Jarboe was bound by the arbitration clause because he signed a "common employment application."

11

arbitration provisions in the Application and the Employment Agreement. We disagree.

Even assuming for the sake of argument that defendants' construction of the August 4, 2017 Application is correct, the Application was superseded by the August 10, 2017 Employment Agreement. As noted, the Employment Agreement, which defines "Company" as DKD of Davis, contains an integration clause that states, in part: "This agreement is the entire agreement between the Company and the employee . . . and this agreement takes the place of all prior and contemporaneous agreements . . . ."

At oral argument, Hanlees, relying on *Jenks v. DLA Piper Rudnik Gray Cary US LLP* (2015) 243 Cal.App.4th 1 (*Jenks*) argued that the integration clause was limited to the terms of Jarboe's at-will employment set forth in the Employment Agreement. *Jenks* is distinguishable. In *Jenks*, the plaintiff received an offer of employment in a letter containing an arbitration provision. (*Jenks*, *supra*, 243 Cal.App.4th at p. 5.) Although the parties subsequently entered into a termination agreement regarding the plaintiff's employment (*ibid*.), the court found the agreement did not supercede or nullify the arbitration provision. (*Id*. at p. 20.) The termination agreement included an integration clause stating: " 'This Agreement constitutes the entire agreement between the parties *with respect to the subject matter hereof and supersedes all prior negotiations and agreements*, whether written or oral [with the exception of the prior confidentiality agreements].' " (*Id*. at p. 15.) Based on this language, the *Jenks* court reasoned: "[T]he integration clause is explicitly limited to 'the subject matter hereof,' namely, the terms of plaintiff's resignation. The [t]ermination [a]greement does not mention arbitration at all, and contains no provisions regarding dispute resolution. Consequently, the *identified* forum for dispute

12

resolution remains arbitration based on the original Offer Letter." (*Id.* at pp. 15-16.)

There are fundamental differences between the Employment Agreement in this case and the *Jenks* agreement. Unlike the agreement in *Jenks*, the Employment Agreement here includes a broad integration clause stating: "This agreement is the entire agreement between the Company and the employee regarding the rights of the Company or employee to terminate employment with or without good cause and this agreement *takes the place of all prior and contemporaneous agreements, representations, and understandings of the employee and the Company*." (Italics added.) Moreover, the Employment Agreement itself contains an exhaustive arbitration provision.

The integration clause in the Employment Agreement is not expressly limited to the terms of Jarboe's at will employment. By its terms, the Employment Agreement expressly superseded the prior Application. (See *Grey v. American Management Services* (2012) 204 Cal.App.4th 803, 805, 807 [plain language of integration clause contained in subsequent employment agreement reflected intent to supersede earlier job application].) Accordingly, any attempt by defendants to vary the terms of the Employment Agreement is barred by the parole evidence rule. (*Casa Herrera, Inc. v. Beydoun* (2002) 32 Cal.4th 336, 344 ["terms contained in an integrated written agreement may not be contradicted by prior or contemporaneous agreements"].) There is no basis to conclude that Jarboe intended the arbitration provision in the Employment Agreement would apply to all the defendants.

*4.    Equitable Estoppel*

Defendants also argue that Jarboe should be equitably estopped from proceeding in court against nonsignatories to the Employment Agreement.

13

Under the equitable estoppel doctrine, "a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are 'intimately founded in and intertwined' with the underlying contract obligations." (*Boucher*, *supra*, 127 Cal.App.4th at p. 271.) The doctrine applies where the claims are " ' "based on the same facts and are inherently inseparable" ' from arbitrable claims against signatory defendants." (*Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1713 (*Metalclad*).) "The fundamental point is that a party may not make use of a contract containing an arbitration clause and then attempt to avoid the duty to arbitrate by defining the forum in which the dispute will be resolved." (*Boucher,* at p. 272; see also *Metalclad,* at p. 1714 [estoppel "prevents a party from playing fast and loose with its commitment to arbitrate, honoring it when advantageous and circumventing it to gain undue advantage"]; *Garcia v. Pexco, LLC* (2017) 11 Cal.App.5th 782, 787 (*Garcia*) [party could not avoid arbitration by framing claims as statutory].)

Defendants rely on *Metalclad, Boucher,* and *Garcia,* to argue equitable estoppel applies here. It's true that this case concerns the efforts of nonsignatories to compel a signatory to arbitrate. But that is where the similarities end. Significant differences between the situations in each of those cases and this one command a different result. The first difference is that the *integral* nature of the relationships between the parties in *Metalclad, Boucher,* and *Garcia* was demonstrated by evidence in the record in each of those cases.

In *Metalclad,* the plaintiff had a written stock purchase agreement, that included an arbitration clause, with Geologic, a subsidiary of defendant Ventana. (*Metalclad, supra,* 109 Cal.App.4th at pp. 1709–1710.) Metalclad

14

sued Ventana, Geologic and others for breach of contract, fraud and other claims, and later dropped Geologic from the suit. (*Id.* at p. 1710.) Ventana successfully compelled arbitration under Geologic's contract with Metalclad, even though not a signatory. (*Id.* at pp. 1717–1719) The court based its decision on the "nexus" between Metalclad's claims against Ventana and the underlying contract between Metalclad and Geologic, as well as the "integral relationship" between Geologic and Ventana as subsidiary and parent. (*Id.* at pp. 1717–1718.)

In *Boucher,* the plaintiff entered into a written three-year employment contract, containing an arbitration clause, with Financial Title Company (Financial). (*Boucher, supra,* 127 Cal.App.4th at p. 265.) Shortly thereafter, Financial's assets were transferred to Alliance Title Company, Inc. (Alliance). (*Ibid.*) Alliance refused to honor Boucher's contract with Financial. (*Ibid.*) Boucher sued both Financial and Alliance. Both moved to compel arbitration. (*Id.* at pp. 265–266.) Alliance demonstrated that its majority shareholder owned all of Financial's stock and that Financial transferred all its assets to Alliance. (*Id.* at p. 266.) The court said that a nonsignatory may invoke an arbitration clause to compel a signatory plaintiff to arbitrate claims when the causes of action against the nonsignatory are intimately founded in and intertwined with the underlying contract obligations. (*Id.* at p. 271.) Because Boucher's claims relied on and assumed the existence of the employment agreement with Financial and there was a close relationship between Financial and Alliance, its corporate successor, Boucher was required to arbitrate against the nonsignatory. (*Id.* at pp. 272–273.)

Similarly, in *Garcia*, the plaintiff asserted Labor Code violations against his employer, Real Time, a staffing company, and Pexco, the company for which Real Time assigned Garcia to work. (*Garcia, supra,* 11 Cal.App.5th

15

at pp. 784–785.) Garcia's employment application had a provision that required him to arbitrate " 'any dispute' " with Real Time, but not with Pexco. (*Id.* at p. 784.) The court held Pexco, even though a nonsignatory, could compel arbitration based on equitable estoppel because Garcia's "claims against Pexco are rooted in his employment relationship with Real Time." (*Id.* at p. 787.) In so holding, the court explained that Garcia "cannot attempt to link Pexco to Real Time to hold it liable for alleged wage and hour claims, while at the same time arguing the arbitration provision only applies to Real Time and not Pexco." (*Id.* at p. 788.)

Here, unlike in *Garcia*, the court ordered Jarboe's claims against DKD of Davis to arbitration, but declined to order the claims against other defendants because there was no showing they were either rooted in his employment with DKD of Davis or within the scope of Jarboe's agreement to arbitrate any claims against the "company." (See, *ante*, B.2. & 3.)

In contrast to the proven close relationships between the signatories and the nonsignatories in *Metalclad, Boucher,* and *Garcia,* the precise nature of the relationship between Hanlees and its affiliated dealerships is unproven in this record. While the record shows that the dealerships are subject to "common ownership," there is no evidence showing the relationship among the separate corporate entities or how they operated with respect to each other's employees. Nothing indicates that being hired by DKD of Davis, meant that Jarboe concurrently worked for all the other dealerships. Rather, the record suggests that each dealership maintained separate relationships with that dealership's employees. For example, before Jarboe began working for Leehan of Davis he needed to be "moved" from DKD of Davis. Following this move, Jarboe's payroll records reflect Leehan of Davis as his only employer.

Defendants rely on Jarboe's allegations in the operative complaint that the defendants were "joint employer[s]." Defendants also claim Jarboe's complaint treats all defendants as a single enterprise because all of the causes of action except for one are alleged against "All Defendants" without distinction. These boilerplate allegations are not sufficient to support defendants' equitable estoppel claim. (See *Barsegian v. Kessler & Kessler* (2013) 215 Cal.App.4th 446, 452–453.) The defendants have not admitted that they are "joint employer[s]" nor have they provided any evidence that shows a joint employment relationship with Jarboe.

The only conclusion that can be drawn on this record is that there is *some* relationship between Hanlees and its affiliated dealerships. But it is unclear what that relationship may be and it has not been shown to be *integral* to support the application for equitable estoppel. (See, e.g., *Thomson-CSF, S.A. v. American Arbitration Assn.* (2d Cir.1995) 64 F.3d 773, 777 ["As a general matter, . . . a corporate relationship alone is not sufficient to bind a nonsignatory to an arbitration agreement"].)

Nor is there a basis to conclude that Jarboe's claims are " ' "intimately founded in and intertwined with" ' " the Arbitration Agreements. (*Metalclad, supra,* 109 Cal.App.4th at p. 1717.) Because Jarboe "treats all defendants as a single enterprise" defendants assert that it would be inequitable to allow him to link Leehan of Davis with the other defendants for purposes of wage and hour claims, while at the same time arguing that the arbitration provisions only apply to DKD of Davis.

Jarboe's claims against the company, DKD of Davis, arising from his employment agreement will proceed to arbitration. The claims against other defendants for which there is no agreement to arbitrate will not. The mere fact that the claims against Leehan of Davis and the other defendants may be

17

related to the claims DKD of Davis is arbitrating against Jarboe does not compel application of equitable estoppel. Rather, the linchpin of the estoppel doctrine is fairness: " 'Equitable estoppel precludes a party from asserting rights "he otherwise would have had against another" when his own conduct renders assertion of those rights contrary to equity.' " (*Metalclad, supra,* 109 Cal.App.4th at p. 1713; see also *City of Hope, supra,* 102 Cal.App.4th at pp. 1370–1371.)

In *Metalclad, Boucher,* and *Garcia,* it was equitable to compel the signatories into arbitration against nonsignatories because each of the signatories raised claims that were founded on the underlying contracts; the signatories sought to enforce a benefit under the nonsignatories while seeking to avoid arbitration. By contrast, in this case, Jarboe is not seeking to obtain benefits under his employment agreement with DKD of Davis against Hanlees and the other dealerships under the Employment Agreement, as there are none, and he is arbitrating the claims against his employing company. Simply put, the inequities that the doctrine of equitable estoppel is designed to address are not present.

## C. *The Trial Court Correctly Refused to Stay the Proceedings*

Defendants argue that the trial court erred in refusing to stay both Jarboe's PAGA claim and his remaining wage and hour claims against the nonsignatory defendants, while his individual claims against DKD of Davis are being arbitrated.

Code of Civil Procedure section 1281.4 provides: "If a court of competent jurisdiction, whether in this State or not, has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the

18

action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies. [¶]. . . [¶] If the issue which is the controversy subject to arbitration is severable, the stay may be with respect to that issue only."

Citing *Franco v. Arakelian Enterprises, Inc.* (2015) 234 Cal.App.4th 947, defendants argue that a stay was required to prevent inconsistent determinations that could arise from overlapping issues and possible res judicata/collateral estoppel implications that could affect the arbitrator's jurisdiction. In *Franco,* the court stated that a stay was required "[b]ecause the issues subject to litigation under the PAGA might overlap those that are subject to arbitration of Franco's individual claims . . . ." (*Id.* at p. 966.) While the court directed entry of a stay in *Franco*, the final paragraph of Code of Civil Procedure section 1281.4 "specifically vests the trial court with authority to sever issues." (*Cook v. Superior Court of Los Angeles County* (1966) 240 Cal.App.2d 880, 887.) "[W]hen there is a severance of arbitrable from inarbitrable claims, the trial court has the discretion to stay proceedings on the inarbitrable claims pending resolution of the arbitration. (Code. Civ. Proc., §1281.4; *Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 714.)" (*Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 320.) Nothing in *Franco* can be interpreted as restricting a court's discretion under these circumstances.

Nevertheless, defendants insist that a stay is necessary because Jarboe's PAGA claim and his individual claims arise out of the same nucleus of facts alleged to violate the Labor Code. While there may be similarities between the claims, a PAGA claim "is not a dispute between an employer and an employee arising out of their contractual relationship." (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 386 (*Iskanian*).)

19

Instead, it is "a dispute between an employer and the state, which alleges directly or through its agents—either the [Labor and Workforce Development] Agency or aggrieved employees—that the employer has violated the Labor Code." (*Iskanian*, at pp. 386–387, italics omitted.) Requiring an employee to litigate a portion of a PAGA claim in a forum selected by the employer interferes with "the state's interests in enforcing the Labor Code." (*Iskanian*, at p. 383.)

In *Williams v. Superior Court* (2015) 237 Cal.App.4th 642 (*Williams*) a trial court ordered that in order to give effect to the employee's written agreement to waive representative claims but arbitrate individual claims, an employee's "aggrieved employee" standing under PAGA was to be submitted to an arbitrator. (*Id.* at p. 645.) The appellate court reversed, concluding that under *Iskanian* the representative action waiver was ineffective and contrary to public policy and the PAGA cause of action was not divisible into separate individual and representative claims. (*Ibid.*) Citing our decision in *Reyes v. Macy's, Inc.* (2011) 202 Cal.App.4th 1119, the court observed that "case law suggests that a single representative PAGA claim cannot be split into an arbitrable individual claim and a nonarbitrable representative claim. (*Williams*, at p. 649, italics omitted.) Although Jarboe alleges, in conformity with the statutory language,[6] that he is "an aggrieved employee" seeking recovery of civil penalties "on behalf of himself or herself and other current

---

[6] Labor Code section 2699, subdivision (a) provides: "Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3."

and former aggrieved employees," the claim is not an individual one. (Lab. Code, § 2699, subd. (a); *Reyes v. Macy's,* at p. 1123.) Rather, Jarboe brings the PAGA claim "as the proxy or agent of the state's labor law enforcement agencies." (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 986 (*Arias*).) Recently, our Supreme Court, in *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, confirmed that "[a]ll PAGA claims are 'representative' actions in the sense that they are brought on the state's behalf." (*Id.* at p. 185.)

Because a PAGA claim is representative and does not belong to an employee individually, an employer should not be able dictate how and where the representative action proceeds. (See *Perez v. U-Haul Co. of California* (2016) 3 Cal.App.5th 408, 421; *Williams, supra*, 237 Cal.App.4th at p. 649.) At oral argument, Hanlees contested the inherent unfairness in allowing the PAGA claim to proceed, because a successful employee would benefit from a judgment that has no reciprocal preclusive effect for a successful employer. However, as our Supreme Court explained in *Arias,* "The potential for nonparty aggrieved employees to benefit from a favorable judgment under the act without being bound by an adverse judgment, however, is not unique to the Labor Code Private Attorneys General Act of 2004. It also exists when an action seeking civil penalties for Labor Code violations is brought by a government agency rather than by an aggrieved employee suing under the Labor Code Private Attorneys General Act of 2004. Because an action under the act is designed to protect the public, and the potential impact on remedies other than civil penalties is ancillary to the action's primary objective, the one-way operation of collateral estoppel in this limited situation does not violate the employer's right to due process of law." (*Arias, supra,* 46 Cal.4th at p. 987.)

21

Accordingly, we conclude the trial court did not abuse its discretion in declining to stay the PAGA action pending the arbitration of Jarboe's individual claims.

Finally, defendants contend that they requested a stay of all non-arbitrable claims not just the PAGA claim. But the trial court's order does not address the wage and hour claims. We cannot review the propriety of a non-existent ruling. The proper vehicle for raising this claim of error was a motion for reconsideration. (Code Civ. Proc., § 1008). As defendants' time to seek reconsideration has long since passed, we deem this issue forfeited on appeal.

## D. *Unconscionability*

Jarboe argues the trial court should have ruled that the Arbitration Agreements were unenforceable in their entirety due to both procedural and substantive unconscionability. Jarboe, however, has not appealed from the trial court's order compelling arbitration of his individual claims against DKD of Davis. Nor could he, because an order compelling arbitration is not appealable. (*Ashburn v. AIG Financial Advisors, Inc.* (2015) 234 Cal.App.4th 79, 94.) Moreover, the general rule is that a respondent who has not appealed from a judgment may not assert error on appeal. (*Hutchinson v. City of Sacramento* (1993) 17 Cal.App.4th 791, 798.) Accordingly, we do not address Jarboe's claim that the Arbitration Agreements were unenforceable due to unconscionability.

## IV. DISPOSITION

The trial court's order granting in part and denying in part defendants' motion to compel Jarboe to arbitrate claims and declining to stay the PAGA claim is affirmed. Jarboe shall recover his costs on appeal.

_____

Siggins, P.J.

We concur:

_____

Fujisaki, J.

_____

Jackson, J.

*Jarboe v. Hanlees*, A156411

23

Trial Court:                                          Alameda County
                                                     Superior Court


Trial Judge:                                         Hon. Winifred Y. Smith


Counsel:

John P. Boggs, Roman Zhuk, Fine, Boggs, & Perkins, LLP for Appellants.

Nicholas A. Carlin, Brian S. Conlon, Phillips, Erlewine, Given, & Carlin, LLP for Respondent.