Filed 4/21/23

# CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION EIGHT

| | |
|---|---|
| EVANGELINA YANEZ FUENTES, | B314490 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. 20STCV35350 |
| v. | |
| EMPIRE NISSAN, INC., et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mel Red Recana, Judge. Reversed.

Fisher & Phillips, John M. Polson, Tyler Rasmussen, Bret Martin, Megan E. Walker and Christopher C. Hoffman for Defendants and Appellants.

Shegerian & Associates, Carney R. Shegerian and Victoria A. Hane; Javanmardi Law|Holmquist Law, Peter A. Javanmardi and Marc A. Holmquist for Plaintiff and Respondent.

_____

Evangelina Yanez Fuentes signed an arbitration agreement with Empire Nissan, Inc. Nissan fired Fuentes, she sued, and Nissan moved to compel arbitration. The trial court ruled the arbitration contract was unconscionable. The unconscionability defense has two mandatory elements: a party must establish both *procedural* and *substantive* unconscionability. (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*Kho*).) We reverse because there was a fatal omission: no substantive unconscionability.

By coincidence, this arbitration contract is substantially similar to the form Nissan arbitration contract in another case we decide today: *Basith v. Lithia Motors, Inc.* (Apr. 21, 2023, B316098) ___ Cal.App.5th ___. The contract also is substantially similar to contracts in other cases, as we will describe.

I

When Fuentes applied to work for Nissan, she signed paper documents that included an "Applicant Statement and Agreement." Below that heading, the print in this one-page form was strikingly minute and, in the record photocopy, blurry to boot. We append this one-page form to this opinion. (See appendix A, *post*.) The tiny and blurred print on this copy renders it largely unreadable. We also append a copy of its text, in larger font, as appendix B, *post*.

The longest paragraph squeezed something like 900 words into about three vertical inches. We quote these hundreds of words, which are the arbitration agreement in this case. To facilitate comprehension, we italicize the 12 key words and block indent this mammoth paragraph:

"I also acknowledge that the Company utilizes a system of alternative dispute resolution which involves binding arbitration to resolve all disputes which may arise out of the employment context.  Because of the mutual benefits (such as possible reduced expense and possible increased efficiency) which private binding arbitration can provide both the Company and myself, I and the Company both agree that *any claim*, dispute, and/or controversy that either party may have against one another (including, but not limited to, any claims of discrimination and harassment, whether they be based on the California Fair Employment and Housing Act, Title VII or the Civil Rights Act of 1964, as amended, as well as all other applicable state or federal laws or regulations) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and the Company (or its owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company, whether based on tort, contract, statutory, or equitable law, or otherwise, (with the sole exception of claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under the California Workers' Compensation Act, and Employment Development Department claims) *shall be submitted to and determined exclusively by binding arbitration*.  In order to provide for the efficient and timely adjudication of claims,

the arbitrator is prohibited from consolidating the claims of others into one proceeding. This means that an arbitrator will hear only my individual claims and does not have the authority to fashion a proceeding as a class or collective action or to award relief to a group of employees in one proceeding. Thus, the Company has the right to defeat any attempt by me to file or join other employees in a class, collective, or joint action lawsuit or arbitration (collectively 'class claims'). I further understand that I will not be disciplined, discharged, or otherwise retaliated against for exercising my rights under Section 7 of the National Labor Relations Act, including but not limited to challenging the limitation on a class, collective, or joint action. I understand and agree that nothing in this agreement shall be construed so as to preclude me from filing any administrative charge with, or from participating in any investigation of a charge conducted by any government agency such as the Department of Fair Employment and Housing and/or the Equal Employment Opportunity Commission; however, after I exhaust such administrative process/investigation, I understand and agree that I must pursue any such claims through this binding arbitration procedure. I acknowledge that the Company's business and the nature of my employment in that business affect interstate commerce. I agree that the arbitration and this Agreement shall be controlled by the Federal Arbitration Act, in conformity with the procedures of the California Arbitration Act (Cal. Code Civ. Proc. sec 1280 et seq., including section 1283.95 and all of the Act's other mandatory and permissive rights in discovery). However,

in addition to requirements imposed by law, any arbitrator herein shall be a retired California Superior Court Judge and shall be subject to disqualification on the same grounds as would apply to a judge of such court. To the extent applicable in civil actions in California courts, the following shall apply and be observed: all rules of pleading (including the right of demurrer), all rules of evidence, all rights to resolution of the dispute by means of motions for summary judgment, judgment on the pleadings, and judgment under Code of Civil Procedure Section 631.8. Resolution of the dispute shall be based solely upon the law governing the claims and defenses pleaded, and the arbitrator may not invoke any basis (including, but not limited to, notions of 'just cause') other than such controlling law. The arbitrator shall have the immunity of a judicial officer from civil liability when acting in the capacity of an arbitrator, which immunity supplements any other existing immunity. Likewise, all communications during or in connection with the arbitration proceedings are privileged in accordance with Cal. Civil Code Section 47(b). As reasonably required to allow full use and benefit of this Agreement's modifications to the Act's procedures, the arbitrator shall extend the times set by the Act for the giving of notices and setting of hearings. Awards shall include the arbitrator's written reasoned opinion. If CCP § 1284.2 conflicts with other substantive statutory provisions or controlling case law, the allocation of costs and arbitrator fees shall be governed by said statutory provisions or controlling case law instead of CCP § 1284.2. Both the Company and I agree that any arbitration proceeding must move forward

5

under the Federal Arbitration Act (9 U.S.C. § § 3-4) even though the claims may also involve or relate to parties who are not parties to the arbitration agreement and/or claims that are not subject to arbitration, thus the court may not refuse to enforce this arbitration agreement and may not stay the arbitration proceeding despite the provisions of California Code of Civil Procedure § 1281.2(c). I UNDERSTAND BY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH I AND THE COMPANY GIVE UP OUR RIGHTS TO TRIAL BY JURY."

We pause to note this lengthy paragraph is substantially similar to the arbitration contract not only in *Basith*, but also to the arbitration contracts in *Kho*, *supra*, 8 Cal.5th at page 119 and *Davis v. TWC Dealer Group, Inc.* (2019) 41 Cal.App.5th 662, 665– 674 (*Davis*). These cases all involved car dealerships. As was true here, the employer in *Basith* also was a Nissan dealership, although not the same one. *Kho* and *Davis* involved Toyota dealerships. (*Kho*, at p. 118; *Davis*, at p. 665.) *Kho* is unlike this case and unlike *Basith*, however, because our cases have no issue about administrative Berman hearings. The issue about Berman hearings was central to the *Kho* holding, where the majority and dissenting opinions used the word "Berman" over 100 times. *Davis* we discuss at the end of this opinion.

We return to the text of this arbitration agreement. After the just-quoted paragraph and near the bottom of this one-page form, this contract stated no "agreements contrary to the express language of this agreement are valid unless they are in writing and signed by the President of the Company . . . ."

6

Nissan later asked Fuentes to sign a second agreement. This one concerned trade secrets; it did not mention arbitration. About six months later, Nissan asked Fuentes to sign a third contract: another trade secret agreement substantially identical to the second agreement. The two trade secret agreements had integration clauses. Each stated the contract was the entire agreement between the parties "regarding the secrecy, use and disclosure of the Company's Proprietary Information, Trade Secrets and Confidential Information and this Agreement supersedes any and all prior agreements regarding these issues." These two agreements permitted Nissan to seek injunctive relief in the event of breach. The agreements also contained a severance provision allowing "any court of competent jurisdiction" to sever invalid, illegal, or unenforceable provisions. The final trade secret contract mirrored the earlier one and did not refer to arbitration.

After termination, Fuentes sued Nissan, as well as Romero Motors Corporation and Oremor Management & Investment Company, for discrimination and wrongful termination. We call all three defendants Nissan. Nissan moved to compel arbitration. The trial court found the arbitration agreement unconscionable and denied the motion. Nissan appealed.

<center>II</center>

This dispute must go to arbitration.

<center>A</center>

The governing law is both federal and state in character. We begin with federal law.

The contract provided the Federal Arbitration Act (9 U.S.C. §§ 1 et seq; the Act) would control, and the Act indeed does

<center>7</center>

control: selling Nissan cars affects interstate commerce. No one disputes this.

Congress passed the Act in response to judicial hostility to arbitration. The Act contains an enforcement mandate, which renders agreements to arbitrate enforceable as a matter of federal law, and a saving clause, which permits invalidation of arbitration clauses on grounds applicable to any contract. (9 U.S.C. § 2; see *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339–340 (*Concepcion*); *Epic Systems Corp. v. Lewis* (2018) 138 S.Ct. 1612, 1621–1622.)

The result is an equal-treatment principle: a state court may invalidate an arbitration agreement according to generally applicable contract defenses like unconscionability, but not on the basis of legal rules that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue. Under this principle, the federal Act preempts any state rule discriminating on its face against arbitration, like laws prohibiting the arbitration of a particular type of claim. Even rules that are generally applicable as a formal matter are not immune to preemption by the Act. (*Viking River Cruises, Inc. v. Moriana* (2022) __ U.S. __ [142 S.Ct. 1906, 1917–1918] (*Viking*).)

State courts cannot invalidate arbitration contracts on the basis of a special or selective arbitration-only version of unconscionability. This has been true at least since *Concepcion* in 2011. (See *Concepcion, supra*, 563 U.S. at pp. 341–343.) That decision observed the judicial hostility towards arbitration had manifested itself in a great variety of devices and formulas that declared arbitration against public policy. The *Concepcion* decision also noted that, in the past, California courts had been

8

more likely to hold arbitration contracts unconscionable than other contracts.  (*Id.* at p. 342.)

In *Concepcion* and in the many cases that have followed it, the Supreme Court of the United States has prohibited state courts from selectively disfavoring arbitration agreements.  (E.g., *DIRECTV, Inc. v. Imburgia* (2015) 577 U.S. 47, 53 [lower court judges are free to note their disagreement with a decision of this Court, but the Supremacy Clause forbids state courts to dissociate themselves from federal law because of disagreement with its content or a refusal to recognize a higher court's superior authority]; see also *id.* at p. 54 ["we must decide whether the decision of the California court places arbitration contracts 'on equal footing with all other contracts' "] [quoting *Buckeye Check Cashing, Inc. v. Cardegna* (2006) 546 U.S. 440, 443].)

When "California courts would not interpret contracts other than arbitration contracts the same way," that selective judicial hostility to arbitration is preempted.  (*DIRECTV, Inc. v. Imburgia, supra*, 577 U.S. at p. 55; see also *id.* at pp. 55–59.)

Turning now to state law, our review is independent, for the facts are undisputed.  Fuentes had the burden of establishing unconscionability.  (*Kho, supra*, 8 Cal.5th at p. 126.)

The unconscionability defense has two parts:  procedural unconscionability and substantive unconscionability.  (*Kho, supra*, 8 Cal.5th at p. 125.)  As the adjectives imply, procedural unconscionability concerns the fairness of the procedures surrounding the formation of the contract, while substantive unconscionability goes to whether its substance is unfair to the employee.  (*Ibid.*)

9

In other words, one issue focuses on the procedures leading up to the contract. The other issue is whether the final deal is fair.

Fuentes must show both procedural and substantive unconscionability to establish the defense. These two elements need not be present to the same degree. Rather we evaluate them on a sliding scale. The more substantively oppressive the contract terms, the less evidence of procedural unconscionability is required to conclude that the contract is unenforceable. Conversely, the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required. (*Kho*, *supra*, 8 Cal.5th at pp. 125–126.)

Nearly every form employment contract can be perceived as having some procedural unfairness. Employees may lack power to bargain at all. Sometimes employers insist, "sign it or no job." (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1241, 1244.) When the law attributes some procedural unfairness to every form employment contract, the real fight boils down to whether the substance of the final terms are fair. We must enforce this contract if its substance is even-handed.

### B

We reverse the trial court's ruling because this contract lacks substantive unconscionability. Its substance is fair.

Fuentes launches five attacks on the substance of this contract. Each attack is unsuccessful.

### 1

Fuentes argues the tiny and unreadable print of Nissan's form makes the *substance* of the contract unfair.

Tiny font size and unreadability make it hard or impossible for employees to read, and thus to understand, the contract.

10

(E.g., *Fisher v. MoneyGram Intern., Inc.* (2021) 66 Cal.App.5th 1084, 1097-1103, 1107 [six-point font justified "an extreme assessment of procedural unconscionability"].)

Tiny font size and unreadability go to the *process* of contract formation, however, and not the substance of the outcome. Font size and readability thus are logically pertinent to procedural unconscionability and not to substantive unconscionability.

To make this logical point plain, imagine shrinking a contract fair in substance down to *less than one–point font*: a font so minute as to be completely unreadable without a strong magnifying glass. The fairness of the contract's substance, however, remains unchanged. Font is irrelevant to fairness.

We go over this significant point in more detail.

Fuentes accurately summarizes the difference between procedural and substantive unconscionability. We quote page 17 of her brief. "Procedural unconscionability specifically 'concerns the manner in which the contract was negotiated and the circumstances of the parties at that time.' (*Kinney v. United Health Care Services, Inc.* (1999) 70 Cal.App.4th 1322, 1329.) Substantive unconscionability focuses on overly harsh or one-side[d] results."

Font size is not the substance of a contract. Terms can be fair or unfair in substance, no matter the font size. When an employer puts a contract in an unreadably minute font, this practice definitely is problematic, but not for *substantive* reasons. Rather, during contract formation, an employer's practice of using tiny print creates the same potential for surprise as can practices like using baffling legalese, or imposing coercive time pressures, or preventing employees from consulting counsel. All

11

deceptive and coercive *procedures* by employers can make it more likely employees do not fully understand, or do not understand at all, the arrangement to which they supposedly are assenting. If it is impossible to read, it will be impossible to understand. But once the parties have completed the contracting procedures, whether the substantive result is unconscionable is a conceptually separate question.

Our Supreme Court made these points in *Kho*. (*Kho*, *supra*, 8 Cal.5th at pp. 125–129.) *Kho* did not hold that font size counts twice in the analysis of unconscionability.

Under California law, an agreement must be both procedurally and substantively unconscionable to be unenforceable. Allowing a single feature to count for both categories would nullify this requirement.

To nullify the element of substantive unconscionability would change the law. That change would make the unconscionability doctrine into a one-element defense where the sole issue would be whether there is procedural unconscionability. This would tend to call into question all form contracts—a profound change indeed. This change would be profound because there is procedural unconscionability whenever one party has superior bargaining power and presents a contract of adhesion on a take-it-or-leave-it basis. That describes innumerable contracts, especially in the online world, where the standard contract is take-it-or-leave-it.

Just as it would be momentous to nullify the element of substantive unconscionability, so too would it be unwise to dilute or trivialize it by smuggling in procedural objections masked as substantive points. Watering down substantive unconscionability in this way would tend towards the same significant doctrinal revision as eliminating the substantive

12

element altogether.  Nor could courts cabin the development by making the new rules apply only to arbitration contracts.  Arbitration-specific rules are preempted.  (*Concepcion, supra*, 563 U.S. at pp. 341–343; *DIRECTV, Inc. v. Imburgia, supra*, 577 U.S. at pp. 55–59.)

Is it strange that a contract can be enforced when it is nearly impossible to read?  Contract law enforces contracts you cannot read at all, if you are blind, or illiterate, or the contract language is foreign to you.  (E.g., *Caballero v. Premier Care Simi Valley LLC* (2021) 69 Cal.App.5th 512, 518–19 [inability to read English]; *Randas v. YMCA of Metro. Los Angeles* (1993) 17 Cal.App.4th 158, 160, 163 ["literate in Greek but not English"], citing 3 Corbin, Contracts (1960) § 607, pp. 668–669.)  Fuentes cites no case invalidating a contract solely because one side lacked the ability to read it and without regard to whether the substance was fair.  Nor does she contend she asked for a more legible version and Nissan refused.

In sum, tiny and unreadable print indeed is a problem, but is a problem of *procedural* unconscionability.  We cannot double count it as a problem of substantive unconscionability.

2

Fuentes argues the arbitration arrangement lacks mutuality.  She contends the arbitration contract is unfair because her claims must all go to arbitration while Nissan, via the trade secret contracts, has left itself free to go to court.  Fuentes says the second and third agreements about trade secrets modified the first contract about arbitration in a way that destroyed mutuality.

It is said that, in assessing substantive unconscionability, the paramount consideration is mutuality.  (*Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1287 (*Nyulassy*).)  Is

13

this true?  Is mutuality a "generally applicable" contract defense?  (*Concepcion*, *supra*, 573 U.S. at p. 343.)  The parties cite cases solely in the arbitration context.  They have not put this point in dispute, however, and we do not pursue the question out of respect for their understanding of this controversy.  The question is inessential to our decision because, assuming mutuality indeed is a generally applicable requirement, this contract has it.

Assessing mutuality requires us to interpret the interplay between the agreements.  We independently review this question of contract interpretation.  (*RMR Equip. Rental, Inc. v. Residential Fund 1347, LLC* (2021) 65 Cal.App.5th 383, 392.)

Our starting point is, as always, the words of the contract.  When different contracts relate to the same matter between the same parties, we interpret them together, meaning we aim to make the parts into a consistent and sensible whole.  (Civ. Code, § 1642.)  We do so with awareness that federal and California law strongly favor arbitration.  (9 U.S.C. § 2; *Kho*, *supra*, 8 Cal.5th at p. 125.)  We search for a lawful and reasonable interpretation.  (Civ. Code, § 1643.)

Under these principles, Fuentes's argument is in error.  The three contracts she entered preserve mutuality.

The first contract—the arbitration agreement itself—is completely mutual:  Fuentes and Nissan *both* must use arbitration exclusively.  Neither can go to court.  The key language was, with our italics, that "I and the Company *both agree* that any claim . . . shall be . . . determined *exclusively by binding arbitration.*"

Fuentes says the problem arose, not in the arbitration agreement, but from the later trade secret contracts.  She argues the later contracts allow Nissan recourse to court for injunctions

14

and, by virtue of their integration clauses, these contracts eclipsed the arbitration agreement and destroyed its mutuality.

Fuentes misinterprets the contracts. Reading the contracts together, Nissan has a right to seek trade secret injunctions only in arbitration. (*O'Hare v. Municipal Resource Consultants* (2003) 107 Cal.App.4th 267, 278 ["it is well settled arbitrators commonly provide equitable relief as part of their decision"].) This preserves mutuality.

The arbitration contract has supervening force because it specifies it can be modified only in a writing signed by the company president, and that president never signed any modification. Together with the principle that the law strongly favors arbitration, these points win the day for Nissan.

The reasonable interpretation is that the agreements, taken as a whole, preserve mutuality.

Added support for this conclusion flows from the fact the trade secret contracts make no reference to arbitration. It would be incongruous to interpret contracts unrelated to arbitration as destroying a contract centrally concerned with arbitration. (Cf. *Jenks v. DLA Piper Rudnick Gray Cary US LLP* (2015) 243 Cal.App.4th 1, 15–16 [termination letter did not supersede agreement to arbitrate where letter with integration clause did not address arbitration].)

Fuentes disputes this conclusion by pointing to the severability paragraph in the trade secret contracts, to which we add emphasis:

"Each provision of this Agreement is intended to be severable. If any *court* of competent jurisdiction determines that one or more of the provisions of this Agreement, or any part thereof, is or are invalid, illegal or unenforceable, such invalidity,

15

illegality or unenforceability shall not affect or impair any other provision of this Agreement, and this Agreement shall be given full force and effect while being construed as if such an invalid, illegal or unenforceable provision had not been contained within it. If the scope of any provision of this Agreement is found to be too broad to permit enforcement of such provision to its full extent, you consent to judicial modification of such provision and enforcement to the maximum extent permitted by law."

Fuentes incorrectly maintains the effect of the italicized word "court" is to abrogate the mutuality of the arbitration agreement and to doom it.

This interpretation is unreasonable. In light of our state's strong policy favoring arbitration, the reasonable interpretation of the severability clause is that it protects the balance of the agreement from developing case law decisions that unexpectedly invalidate some provision within the agreement. This reasonable interpretation preserves mutuality and arbitration.

This reasonable interpretation extends through the final sentence quoted above, which refers to "judicial" modification. An arbitrator does "judicial" work in an arbitration setting.

Fuentes cites *Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74 (*Carmona*), which is not on point. In *Carmona*, the employee signed an employment agreement that contained an arbitration clause and a confidentiality subagreement. (*Id.* at pp. 79–80.) The confidentiality subagreement contained an enforcement clause explicitly allowing the employer to seek relief for breach of the agreement in either court or arbitration. (*Ibid.*) By contrast, the trade secret agreements here neither address arbitration nor give Nissan a choice between court or arbitration.

16

In sum, the trial court erred by faulting this arbitration agreement for a lack of mutuality. Properly interpreted, the agreement is even-handed and enforceable.

3

We understand Fuentes to argue that, even if there *actually* is mutuality as a matter of law, the contract is still substantively unconscionable and unfair because the existence of separate contracts would be confusing to a layperson. This argument is incorrect.

In essence, this argument is that separate contracts are unfair: the whole thing was not user-friendly. Certainly a profusion of contracts can be a problem. But the problem is of procedural rather than substantive unconscionability. Multiple contracts are like tiny print or obscure legalese or extreme time limits that force one to read in a rush. All these procedural problems make it hard to understand the deal. But just as a fair contract can be written in microscopic font, so too can it be written in confusing legalese and in multiple contracts.

In short, there was no substantive unconscionability because there was full mutuality. Whether the contracts' multiplicity or convoluted language would be confusing to laypeople is an issue, but not an issue of substantive unconscionability. To mistake a procedural objection for a problem of substance would unwisely dilute this doctrine, as we have described.

4

Another argument about substantive unfairness is that Fuentes was the only one to sign the arbitration agreement, and this shows a lack of mutuality.

17

This argument is misplaced. Nissan's missing signature is irrelevant to whether the substance of the contact is fair. A missing signature cannot make a fair deal unfair.

The presence of a signature might be pertinent to *whether a contract exists at all*, but that is not our issue. The issue here is only *whether an existing contract is fair*. These questions are analytically separate.

A signature can be important to show contractual *assent*, but that is beside the point here: Nissan certainly assented to its own arbitration agreement—the agreement that it drafted and required Fuentes to sign and that it now is trying to enforce. In this setting, no signature was necessary to prove Nissan's assent. (*Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 176 [what matters is whether there is agreement, not whether there is a signature; agreement can be found from conduct that ratifies or impliedly accepts the deal].) Had Nissan not assented, there would be no contract at all. The trial court expressly found the parties *had* entered a contract. Fuentes does not challenge this finding on appeal.

5

Fuentes's final argument is that the arbitration agreement is unfair because it did not explain how to initiate arbitration. This same invalid complaint appeared in a recent case. There, an employee said an arbitration agreement was unfair because it "did not tell her how to initiate arbitration." (*Alvarez v. Altamed Health Services Corp.* (2021) 60 Cal.App.5th 572, 590 (*Alvarez*).) The *Alvarez* court rejected this complaint. It reasoned "the failure to provide a copy of the arbitration rules generally raises procedural unconscionability concerns only if there is a substantively unconscionable provision in the omitted rules. The

18

agreement in this case states the procedures of the California Arbitration Act will apply.  There are no substantively unconscionable rules in the Act." (*Ibid.*)

We follow *Alvarez*.  Fuentes's agreement states the procedural rules of the California Arbitration Act apply.  Fuentes does not challenge these rules, which are not unconscionable.  In this situation, failing to include instructions does not establish substantive unconscionability.

6

Fuentes urges us to follow *Davis*, which invalidated a substantially similar arbitration agreement.  We respectfully disagree with *Davis*'s analysis of substantive unconscionability.  We see four problems.

First, the *Davis* opinion conceived of font size as an issue of substance.  (*Davis*, *supra*, 41 Cal.App.5th at p. 674.)  We have explained why we believe this is improper double counting.

Second, *Davis* suggested that it "can be argued" the agreement was substantively unconscionable because only the employee and not the employer had signed the form.  (See *Davis*, *supra*, 41 Cal.App.5th at p. 674.)  Our analysis of the signature issue, set forth above, is contrary to *Davis*'s tentative suggestion.

Third, *Davis* also implied, without saying so expressly, that there was substantive unconscionability because the employer "has the unilateral right to change or modify the agreement at any time, and without notice" to the employee.  (See *Davis*, *supra*, 41 Cal.App.5th at pp. 674-675.)

Case law counters *Davis*.  (See *Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1473 ["the Agreement's unilateral modification provision is not substantively unconscionable"]; *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199,

19

1214 ["the modification provision does not render the contract illusory"]; *Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 706 ["it has long been the rule that a provision in an agreement permitting one party to modify contract terms does not, standing alone, render a contract illusory because the party with that authority may not change the agreement in such a manner as to frustrate the purpose of the contract"]; *Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373, 389; *Avery Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 61 ["An arbitration agreement between an employer and an employee may reserve to the employer the unilateral right to modify the agreement."]; see generally, *Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 16 [employer's unilateral right to modify employment agreement does not make agreement illusory]; cf. *Peleg v. Neiman Marcus Group, Inc.* (2012) 204 Cal.App.4th 1425, 1433 ["If a modification provision is restricted—by express language or by terms implied under the covenant of good faith and fair dealing—so that it exempts all claims, accrued or known, from a contract change, the arbitration contract is not illusory."].)

Moreover, and alternatively, Fuentes forfeited this unilateral modification argument. Her brief said nothing about it. Nissan had no notice or opportunity to be heard on this claim.

Fourth, *Davis* found substantive unconscionability because the agreement's "broad language could be read to preclude Labor Code Private Attorneys General Act (PAGA; Lab. Code, § 2698 et seq.) representative actions, a violation of public policy." (*Davis*, *supra*, 41 Cal.App.5th at pp. 675-676.) As support, Davis cited *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 383 (*Iskanian*). (*Davis*, at p. 676.) The Supreme

Court of the United States, however, ruled that the Federal Arbitration Act "preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." (*Viking, supra,* 142 S.Ct. at p. 1924.)

Once again, Fuentes also forfeited this PAGA argument. Her brief never mentioned it. Nissan never got notice or an opportunity to be heard on this point. Any discussion of PAGA proceeds without briefing from the parties.

We also distinguish this case from *Davis*, in two different ways.

From its initial paragraph to its last page, the *Davis* opinion prominently focused on the attorney misconduct in the case. (See *Davis*, *supra*, 41 Cal.App.5th at p. 665 [court published to remind counsel of "the importance of candor toward the court"], *id.* at p. 667 ["the quotation misrepresents the agreements here"], *ibid.* [appellate defense counsel's "conduct is not to be condoned"], *id.* at p. 670 ["Such hyperbole has no place here"], *id.* at p. 671 ["We are dumbfounded."], *id.* at p. 676 ["Amazingly," counsel at oral argument told court he had not read the footnote about which the court had written him in a letter], *id.* at p. 678 ["hard to imagine a more obvious violation" of a professional conduct rule for attorneys].) We have no attorney misconduct in this case.

Nor do we have the three separate and internally-contradictory arbitration contracts that troubled the *Davis* court. (See *Davis*, *supra*, 41 Cal.App.5th at p. 675 ["In addition to the internal confusion, the three agreements contain several inconsistencies, if not downright contradictions."].)

For these six reasons, we do not accept Fuentes's suggestion that we follow *Davis*.

Given that there is no substantive unconscionability, we need not and do not address procedural unconscionability. (*Kho*, *supra*, 8 Cal.5th at p. 125 [the defense of unconscionability requires both].)

## DISPOSITION

We reverse and direct the trial court to grant the motion to compel arbitration. We award costs to the appellants.

WILEY, J.

I concur:

HARUTUNIAN, J.*

---

* Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**STRATTON, P.J., Dissenting.**

The arbitration agreement speaks for itself. The print is so fine it is unreadable without magnification. See if you can read it without giving up. And it appears to include the identical font and language found procedurally unconscionable in *Davis v. TWC Dealer Group, Inc.* (2019) 41 Cal.App.5th 662 (*Davis*) and *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111 (*Kho*).

How do we know the language and font are the same? Here is a description of the agreement in *Davis*: "The first agreement . . . is entitled 'Applicant Statement and Agreement' (hereinafter, for consistency with the briefing, Agreement No. 1.) Agreement No. 1 is one page long and consists of six paragraphs, all in identical and small–and quite difficult to read–font. None of the six paragraphs is labeled or titled, in boldface or otherwise. The fourth of the six paragraphs is the one that refers to arbitration, though hardly in language that is easy to comprehend. The paragraph is 30 lines long, and ends with these three sentences: 'If CCP § 1284.2 conflicts with other substantive statutory provisions ore controlling case law, the allocation of costs and arbitrator fees shall be governed by said statutory provisions or controlling case law instead of CCP § 1284.2. Both the Company and I agree that any arbitration proceeding must move forward under the Federal Arbitration Act (9 U.S.C. §§ 3–4) even though the claims may also involve or relate to parties who are not parties in the arbitration agreement and/or claims that are not subject to arbitration; thus, the court may not refuse to enforce this arbitration agreement and may not stay the arbitration proceeding despite the provisions of California Code of Civil Procedure § 1281.2(c). I UNDERSTAND BY AGREEING TO THIS BINDING ARBITRATION PROVISION BOTH I AND THE

1

COMPANY GIVE UP OUR RIGHTS TO TRIAL BY JURY.' "
(*Davis, supra*, 41 Cal.App.5th at pp. 665–666.)

      *Davis* involved a second and third agreement as well.  The second agreement included the following language which is also in the fourth mega-paragraph of the  agreement under inspection here: " 'Because of the mutual benefits (such as reduced expense and increased efficiency) which private binding arbitration can provide both the Company and myself, I and the Company both agree that any claim, dispute, and/or controversy that either party may have against one another (including, but not limited to, any claims of discrimination and harassment, whether they be based on the California Fair Employment and Housing Act, Title VII of the Civil Rights Act of 1964, as amended, as well as all other applicable state or federal laws or regulations) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and the Company (or its owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company, whether based on tort, contract, statutory, or equitable law, or otherwise, (with the sole exception of claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under the California Workers' Compensation Act ,and Employment Development Department claims) shall be submitted to and determined exclusively by binding arbitration.' " (*Davis*, *supra*, 41 Cal.App.5th at pp. 666–667, fn. 2.)  The *Davis* court describes this sentence as "15 lines long." (*Id*. at p. 666.)

The *Davis* Court notes the language and font before it are virtually identical to the language and font adjudged procedurally unconscionable in the *Kho* case. (*Davis*, *supra*, 41 Cal.App.5th at pp. 671–672; *Kho, supra*, 8 Cal.5th at p. 119.) Here is what our Supreme Court said about the virtually identical language and font in *Kho*: "The facts also support the trial court's finding of surprise. The agreement is a paragon of prolixity, only slightly more than a page long but written in an extremely small font. The single dense paragraph covering arbitration requires 51 lines. As the Court of Appeal noted, the text is 'visually impenetrable' and 'challenge[s] the limits of legibility.' [¶] The substance of the agreement is similarly opaque. The sentences are complex, filled with statutory references and legal jargon. The second sentence alone is 12 lines long. . . . A layperson trying to navigate this block text, printed in tiny font, would not have an easy journey." (*Kho*, at p. 128.)

All this is to say that I, like the trial court here and as conceded by Nissan, would find this arbitration agreement riddled with procedural unconscionability, as were the similar agreements in *Davis* and *Kho*. Given the tiny font, prolixity, and the trial court's finding that this was a "take it or leave it" contract of adhesion, I would find a very high degree of procedural unconscionability, as did the trial court.

I disagree with the majority on the issue of substantive unconscionability. As did the courts in *Davis* and *Kho*, I would also find this agreement sufficiently substantively unconscionable. According to the *Kho* Court, substantive unconscionability is concerned with terms that are unreasonably favorable to the more powerful party. (*Kho, supra*, 8 Cal.5th at p. 130.) "Substantive terms that, in the abstract, might not

3

support an unconscionability finding take on greater weight when imposed by a procedure that is demonstrably oppressive. Although procedural unconscionability alone does not invalidate a contract, its existence requires courts to closely scrutinize the substantive terms 'to ensure they are not manifestly unfair or one-sided.' [Citation.] We hold that, given the substantial procedural unconscionability here, even a relatively low degree of substantive unconscionability may suffice to render the agreement unenforceable." (*Id.* at p.130.)

Given the complete unreadability of this arbitration agreement, I would find an extremely high degree of procedural unconscionability, requiring then, as the sliding scale analysis allows, a low degree of substantive unconscionability.

Font and typeface have generally been linked to the analysis of procedural unconscionability only, not substantive unconscionability. However, when discussing substantive unconscionability, the *Kho* Court appeared to endorse the idea that "fine-print terms" would support a finding of substantive, as well as procedural, unconscionability. (*Kho*, *supra*, 8 Cal.5th at p. 130 ["Unconscionable terms ' "impair the integrity of the bargaining process or otherwise contravene the public interest or public policy" ' or attempt to impermissibly alter fundamental legal duties. [Citation.] They may include fine-print terms, unreasonably or unexpectedly harsh terms regarding price or other central aspects of the transaction, and terms that undermine the nondrafting party's reasonable expectations."].) The *Kho* Court quoted language from *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 911, which was describing general unconscionability principles. Although the trial court and the *Davis* Court had no doubt about using fine

4

print as a basis to find substantive unconscionability (*Davis, supra*, 41 Cal.App.5th at p. 674.), I am unsure whether the *Kho* Court meant to extend the indicia of substantive unconscionability to "fine-print terms."  If it did, then the fine print here, which is so small as to challenge the limits of legibility, qualifies.

Nonetheless, the ridiculously tiny print in this agreement prompts for me a discussion of mutuality, a consideration for substantive unconscionability.  I agree with the trial court which found: "[T]he text of the arbitration agreement here is also 'visually impenetrable' and 'challenge[s] the limits of legibility.' Not only is the agreement's text here extremely small, the font of the text is also muddied and broken up, making the agreement nearly unreadable.  Further exacerbating this problem, the provision providing for arbitration is in massive single-block paragraph that is not separated by any spacing.  Indeed, the court can barely identify in the agreement the above mentioned arbitration provision that Defendants set forth.  Even after identifying the arbitration provision, the court can hardly follow the rest of the enormous paragraph – the severely strained eyes become lost and encompassed in a wall of barely legible text."

Substantive unconscionability focuses on the agreement's substance, and whether it is one-sided enough to "shock the conscience."  (*Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1542.)  In assessing substantive unconscionability, the paramount consideration is mutuality.  (*Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1287.)  Generally, lack of mutuality is discussed in terms of a stronger party imposing terms on a weaker party without accepting those terms

5

for itself.  (*Armendariz v. Foundation Health Psychcare* (2000) 24 Cal.4th 83, 118.)

I would expand that concept with this particular agreement.  This agreement with font so small as to challenge the limits of legibility implicates a lack of mutuality.  Presumably the employer who drafted the document knows the terms and provisions it included in the agreement.  However, the employee who is given this illegible document cannot discern the terms and provisions.  If you can't know what you are signing because the other party gives you only an unreadable copy, the stronger party is imposing unknowable terms on the weaker party.  Terms unknowable to one side only are different from difficult, confusing, or prolix terms.  Their unknowability is sufficient to "shock the conscience."

There are other reasons to find this agreement substantively unconscionable.  The Agreement provides that "all terms and conditions of my employment, with the exception of the arbitration agreement, may be changed or withdrawn at Company's unrestricted option at any time, with or without good cause.  No implied, oral or written agreements contrary to the express language of this agreement are valid unless they are in writing and signed by the President of the Company (or majority owner or owners if Company is not a corporation)."  This very term, which gives the Company the unilateral right to change or modify the employment agreement at any time without notice to the employee, was found substantively unconscionable in *Davis*.  (*Davis, supra,* 41 Cal.App.5th at pp. 674–675.)

Moreover, the provision that "the Company has the right to defeat any attempt by me to file or join other employees in a class, collective, or joint action lawsuit or arbitration (collectively

6

'class claims')" appears to preclude Labor Code Private Attorneys General Act (PAGA, Lab. Code § 2698 et seq.) representative actions in any forum, a violation of public policy. (*Davis, supra*, 41 Cal.App.5th at p. 675; see also *Sakkab v. Luxottica Retail N. Am., Inc.* (9th Cir. 2015) 803 F.3d 425, 429–430 [*Ishkanian* held that a waiver depriving a PAGA plaintiff of *any* forum was unenforceable].) The ambiguity of this sentence (is this a waiver or a threat?) renders it unintelligible to a layperson and consequently manifestly unfair.

There is also the issue of confusion caused by the existence of separate agreements. In the "Dealership Confidential Agreement," reference is made to the consequences of a "court of competent jurisdiction" determining that one or more of the provisions are invalid or unenforceable. This seems to suggest that the Company is not bound to arbitrate any claims of improper disclosure of the company's propriety information, trade secrets and confidential information, despite the language in the formal arbitration agreement that everything is arbitrable except for two named exceptions which do not include trade secret claims. It is true enough that an employer certainly has the right to protect its trade secrets as it so chooses. But the upshot of the language it has used in the Dealership Agreement is that this arguable additional exception to arbitration for only the employer is confusing to a layperson and, as such, is unfair.

Based on the foregoing, I would find a sufficient level of substantive unconscionability in this arbitration agreement to render it unenforceable. I part company with several approaches taken by the majority in its analysis. First, the majority appears to dismiss *Kho* as inapposite because it involved a *Berman* hearing waiver and *Davis* as inapposite because it also involved

7

misconduct by counsel.  That the *Kho* and *Davis* courts adjudicated issues in addition to unconscionability does not negate their conclusions about unconscionability.  As far as I am concerned, their analyses are right on point.

Second, "watering down" unconscionability analysis is not what I have in mind.  Acknowledging the obvious is my intention.  Holding a signatory to an illegible contract that is also as prolix as this one strains the concepts of mutuality, fairness and common sense.  If an employee literally cannot read the contract, how is that substantively fair?  The drafting party must have had a reason to use prolix language in tandem with tiny print.  One inference is that this was so employees would indeed not be able to read and then figure out what they were signing.  Another is that the employer may have figured it did not matter whether the agreement was legible because if the applicant wanted the job badly enough, they would sign anything.  Or perhaps the employer was just careless in the drafting process.  Whatever the motivation, the result is a document that is not readable.  I acknowledge the law generally does not give breaks to those who decline to read what they are signing.  That is not the case here; even if the employees wanted to read what they were signing, they could not do so.  The employer has insisted that the employee sign an agreement with unknowable terms.  That makes the agreement one-sided and not mutual.  The employer knows what is in the agreement because the employer drafted it.  The employee has no way of knowing without great magnification.  Acknowledging the extraordinary illegibility of this agreement does not water down our way of analyzing unconscionability.  It is time that this form agreement, which

8

appears to be in use by auto dealerships around the state, be invalidated once and for all.  Accordingly, I dissent.

STRATTON, P. J.

# APPENDIX A

## APPLICANT STATEMENT AND AGREEMENT

[illegible]

[illegible]

[illegible]

[illegible] I UNDERSTAND BY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH I AND THE COMPANY GIVE UP OUR RIGHTS TO TRIAL BY JURY.

[illegible]

[illegible]

[illegible]

*If you have any questions regarding this statement, please ask a Company representative before signing. I hereby acknowledge that I have read the above statement and understand the same.*

DO NOT SIGN UNTIL YOU HAVE READ THE ABOVE STATEMENT & AGREEMENT

Applicant Signature 4/8/2015 Date

EMPIRE00066

AA 099

APPENDIX B

## APPLICANT STATEMENT AND AGREEMENT

In the event of my employment to a position in this Company, I will comply with all rules and regulations of this Company.  I understand that the Company reserves the right to require me to submit to a test for the presence of drugs in my system prior to employment and at any time during my employment, to the extent permitted by law.  I also understand that any offer of employment may be contingent upon the passing of a physical examination.  Further, I understand that at any time after I am hired, the Company may require me to submit to an alcohol test, to the extent permitted by law.  I consent to the disclosure of the results of any physical examination and tests results to the Company.  I also understand that I may be required to take other tests such as personality and honesty tests prior to employment and during my employment.  I understand that should I decline to sign this consent or decline to take any of the above tests, my application for employment may be rejected or my employment may be terminated.  I understand that bonding may be a condition of hire.  If it is, I will be so advised either before or after hiring and a bond application will have to be completed.  I hereby authorize the Company with which I have applied for employment to share my Application for Employment with other affiliated companies/employers, and hereby agree that all terms, conditions and/or agreements contained in this Applicant's Statement and Agreement, or any other documents pertaining to my application for

1

employment, shall be enforceable by me and by such other companies/employers (including their managers, employees and agents), even though I have not signed a separate Applicant's Statement and Agreement for those other companies/employers.

By signing below, I acknowledge that the Company may contact my previous employers and I authorize those employers to disclose to the Company all records and information pertinent to my employment with them.  In addition to authorizing the release of any information regarding my employment, I hereby fully waive any rights or claims I have or may have against my former employers, their agents, employees and representatives, as well as other individuals who release information to the Company, and release them from any and all liability, claims, or damages that may directly or indirectly result from the use, disclosure, or release of any such information by any person or party, whether such information is favorable or unfavorable to me.  I authorize the persons named herein as personal references to provide the Company with any pertinent information they may have regarding myself.  I further understand that as a condition of employment, I may be required to complete additional documentation which would permit the Company and its designated investigative Consumer Reporting Agency to conduct an investigation of my background, which may include inquiry into my past employment, education, and activities, including, but not limited to, credit, criminal background information and driving record.

☐ I do not wish to receive a copy of the Investigative Consumer (background) Report at no cost, if the Company collects, assembles, evaluates, compiles, reports, transmits, transfers, or communicates information on my character, general reputation, personnel characteristics, or mode of living, for employment purposes, which are matters of public record, and does not use the services of an investigative consumer reporting agency.

I also acknowledge that the Company utilizes a system of alternative dispute resolution which involves binding arbitration to resolve all disputes which may arise out of the employment context. Because of the mutual benefits (such as possible reduced expense and possible increased efficiency) which private binding arbitration can provide both the Company and myself, I and the Company both agree that *any claim*, dispute, and/or controversy that either party may have against one another (including, but not limited to, any claims of discrimination and harassment, whether they be based on the California Fair Employment and Housing Act, Title VII or the Civil Rights Act of 1964, as amended, as well as all other applicable state or federal laws or regulations) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and the Company (or its owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my seeking

3

employment with, employment by, or other association with the Company, whether based on tort, contract, statutory, or equitable law, or otherwise, (with the sole exception of claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under the California Workers' Compensation Act, and Employment Development Department claims) *shall be submitted to and determined exclusively by binding arbitration.* In order to provide for the efficient and timely adjudication of claims, the arbitrator is prohibited from consolidating the claims of others into one proceeding. This means that an arbitrator will hear only my individual claims and does not have the authority to fashion a proceeding as a class or collective action or to award relief to a group of employees in one proceeding. Thus, the Company has the right to defeat any attempt by me to file or join other employees in a class, collective, or joint action lawsuit or arbitration (collectively "class claims"). I further understand that I will not be disciplined, discharged, or otherwise retaliated against for exercising my rights under Section 7 of the National Labor Relations Act, including but not limited to challenging the limitation on a class, collective, or joint action. I understand and agree that nothing in this agreement shall be construed so as to preclude me from filing any administrative charge with, or from participating in any investigation of a charge conducted by any government agency such as the Department of Fair Employment and Housing and/or the Equal Employment Opportunity Commission; however, after I exhaust such administrative

4

process/investigation, I understand and agree that I must pursue any such claims through this binding arbitration procedure. I acknowledge that the Company's business and the nature of my employment in that business affect interstate commerce. I agree that the arbitration and this Agreement shall be controlled by the Federal Arbitration Act, in conformity with the procedures of the California Arbitration Act (Cal. Code Civ. Proc. sec 1280 et seq., including section 1283.95 and all of the Act's other mandatory and permissive rights in discovery). However, in addition to requirements imposed by law, any arbitrator herein shall be a retired California Superior Court Judge and shall be subject to disqualification on the same grounds as would apply to a judge of such court. To the extent applicable in civil actions in California courts, the following shall apply and be observed: all rules of pleading (including the right of demurrer), all rules of evidence, all rights to resolution of the dispute by means of motions for summary judgment, judgment on the pleadings, and judgment under Code of Civil Procedure Section 631.8. Resolution of the dispute shall be based solely upon the law governing the claims and defenses pleaded, and the arbitrator may not invoke any basis (including, but not limited to, notions of "just cause") other than such controlling law. The arbitrator shall have the immunity of a judicial officer from civil liability when acting in the capacity of an arbitrator, which immunity supplements any other existing immunity. Likewise, all communications during or in connection with the arbitration proceedings are privileged in accordance with Cal. Civil Code Section 47(b). As reasonably required

to allow full use and benefit of this Agreement's modifications to the Act's procedures, the arbitrator shall extend the times set by the Act for the giving of notices and setting of hearings. Awards shall include the arbitrator's written reasoned opinion. If CCP § 1284.2 conflicts with other substantive statutory provisions or controlling case law, the allocation of costs and arbitrator fees shall be governed by said statutory provisions or controlling case law instead of CCP § 1284.2. Both the Company and I agree that any arbitration proceeding must move forward under the Federal Arbitration Act (9 U.S.C. § § 3-4) even though the claims may also involve or relate to parties who are not parties to the arbitration agreement and/or claims that are not subject to arbitration, thus the court may not refuse to enforce this arbitration agreement and may not stay the arbitration proceeding despite the provisions of California Code of Civil Procedure § 1281.2(c). I UNDERSTAND BY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH I AND THE COMPANY GIVE UP OUR RIGHTS TO TRIAL BY JURY.

I hereby state that all the information that I provided on this application or any other documents filled out in connection with my employment, and in any interview is true and correct. I have withheld nothing that would, if disclosed, affect this application unfavorably. I understand that if I am employed and any such information is later found to be false or incomplete in any respect, I may be discharged from employment.

I agree as follows: My employment and compensation are terminable at will, are for no definite period, and my employment and compensation may be terminated by the Company (employer) at any time and for any reason whatsoever, with or without good cause at the option of either the Company or myself. Consequently, all terms and conditions of my employment, with the exception of the arbitration agreement, may be changed or withdrawn at Company's unrestricted option at any time, with or without good cause. No implied, oral or written agreements contrary to the express language of this agreement are valid unless they are in writing and signed by the President of the Company (or majority owner or owners if Company is not a corporation). No supervisor or representative of the Company, other than the President of the Company (or major owner or owners if Company is not a corporation), has any authority to make any agreements contrary to the foregoing. This agreement is the entire agreement between the Company and the employee regarding the rights of the Company or employee to terminate employment with or without good cause and this agreement takes the place of all prior and contemporaneous agreements, representations, and understandings of the employee and the Company.

Should any term or provision, or portion thereof, be declared void or unenforceable, it shall be severed and the remainder of this agreement shall be enforced.

*If you have any questions regarding this statement, please ask a Company representative before signing. I hereby acknowledge that I have read the above statements and understand the same.*

**DO NOT SIGN UNTIL YOU HAVE READ THE ABOVE STATEMENT & AGREEMENT**

|  |  |
| --- | --- |
| Applicant Signature | Date |

8